THOMAS WOOD, JUNIOR, CLAIMANT OF TWENTY-TWO PACKAGES OR PIECES OF CLOTH, PLAINTIFF IN ERROR, *v.* THE UNITED STATES, DEFENDANTS IN ERROR.

The United States filed in the District Court of the United States, for the Maryland district, a libel of information, in rem, upon a seizure upon land, in the district, of twenty-two pieces of cloth imported into New York, and claiming them as forfeited. The libel contained many counts, but that on which the decision of the Supreme Court was given, was founded on the sixty-sixth section of the revenue act of 1799, which declares that any goods which shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, all such goods, &c., shall be forfeited. The count stated that the goods were not invoiced at the actual cost at the place of exportation. The duties had been paid at New York, on the invoice produced on their entry. They were afterwards transmitted to Baltimore, and were there seized in the stores of certain persons, having the custody thereof for the importer, who was the claimant, under a search-warrant, procured from a magistrate. To establish the fraud in the invoices, the United States offered in evidence sundry other invoices of cloth and cassimere, imported into New York by and consigned to the claimant, to show the fraudulent intention of the claimant in those importations as well as in the present. This evidence was objected to, and the objection was overruled. The District Judge, after the whole evidence was gone through, gave the following instructions to the jury. 1. That the issues found, and which the jury are sworn to try, involve no question except upon the causes of forfeiture alleged in the information and traversed; and therefore no question relating to the mere seizure of the goods is in issue, or material under the pleadings. 2. If the jury shall find from the evidence in the cause, that the invoices of the goods proceeded against, were made up with intent, by false valuations, to evade or defraud the revenue, the United States are entitled to recover, although the jury should also find from the evidence that the goods had been passed through the custom-house at New York, by the collector, and the duties calculated by him on the invoices shall have been paid, or secured to be paid, and the goods delivered by the collector to the importer. 3. That under certain counts in the information, probable cause for the prosecution had been shown by the United States; and that the burden of proof, under the seventy-first section of the act of 2d of March, 1799, was upon the claimant; and that it is incumbent on him to prove to the jury, that the charges in the five counts, charging fraudulent importation, are untrue; that is, that he shall prove the truth of the invoices on which the goods were entered, and that the invoices and packages were not made up to evade or defraud the revenue. 4. That the burden of proof being on the claimant under the seventy-first section of the act of 1799, and the fifteenth section of the act of 14th July, 1832, it is incumbent on him to prove the actual cost of the goods in the invoices and entries stated to have been purchased by him; and that the value of the goods at the time of the seizure, or at any subsequent time, is not material, except so far as to assist or tend to enable the jury to ascertain the prices at the periods of purchase or shipment. 5. That the

[Wood v. The United States.]

burden of proof being upon the claimant, to prove that the invoices were not made up with intent to defraud the revenue, it is not sufficient for him to rely on the invoices themselves, merely, as proving their own truth and fairness. The case was removed by writ of error to the Circuit Court, and there a judgment, affirming the judgment of the District Court, having been entered, the claimant prosecuted a writ of error to the Supreme Court.

Held, first: That the instructions of the District Judge as to the original seizure, or the causes thereof, were correct. It is of no consequence, whatsoever, what were the original grounds of the seizure, whether founded or not; if the goods were in point of law subject to forfeiture. The United States are not bound down by the acts of the seizors to the causes which influenced them in making the seizure, nor by any irregularity on their part in conducting it, if the seizure can be maintained as founded on an actual forfeiture at the time of the seizure. It was rightly held in the District Court, that no question arose on the issues which the jury were to try, except upon the causes of forfeiture alleged in the information.

Second: There was no error in the admission of the evidence of fraud deducible from the other invoices offered in the case. The question was one of fraudulent intent, or not, and upon questions of that sort, where the intent of the party is the matter in issue, it has always been allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate his intent or motive in the particular act directly in judgment.

Third: If the invoices of the goods were fraudulently made, by a false valuation to evade or defraud the revenue, the fact that they were entered, and the duties having been paid or secured at the custom-house at New York upon these invoices, was no bar to the information for the forfeiture of the goods to the United States. It never can be permitted, that a party who perpetrates a fraud upon the custom-house and thereby enters his goods upon false invoices and false valuations, and gets a regular delivery thereof upon the payment of such duties as such false invoices and false valuations require, can avail himself of that very fraud to defeat the purposes of justice.

The sixty-sixth section of the revenue collection act of 1799, ch. 128, remains in full force.

There must be a positive repugnancy between the new and old laws for the collection of the revenue before the old law can be considered as repealed; and even then, the old law is repealed by implication only, pro tanto, to the extent of the repugnancy. The addition of other powers to custom-house officers to carry into effect the object of the former laws, and sedulously introduced to meet the case of a palpable fraud, should not be considered as repealing the former laws. There ought to be a manifest and total repugnancy in the provisions of the later laws, to lead to the conclusion that they abrogated, and were designed to abrogate the former laws.

The burden of proof in the absence of fraud in the entry of the goods was thrown upon the claimant. There was probable cause for seizure shown. Probable cause must, under the seventy-first section of the act of 1799, in connection with the circumstances of this case, mean reasonable ground of presumption that the charge is or may be well founded.

IN error to the Circuit Court of the United States for the district of Maryland.

[Wood v. The United States.]

At the District Court of the United States, for the district of Maryland, on the 27th day of December, 1839, the United States filed an information claiming a forfeiture of twenty-two pieces of cloth, of the value of twenty-five hundred dollars. The information contained nine counts. Afterwards, and before the trial of the cause before a jury, a discontinuance was entered by the district attorney of the United States, of the first, second, third, fourth, and fifth counts. The case was tried before a jury in July, 1840, on the remaining counts in the information; and a verdict and judgment were rendered in favour of the United States. The claimant took a bill of exceptions to the charges of the Court, and prosecuted a writ of error to the Circuit Court. In that Court, a judgment was entered, pro formâ, in favour of the United States; and the case was brought by the claimant, Thomas Wood, by writ of error to the Supreme Court.

The information filed by the United States, in the District Court, in the third count, on the sixty-sixth section of the collection act of 1799 alleged that the goods were not invoiced according to their actual cost at the port of exportation; with design to evade the duties thereon. The sixth, seventh, and eighth counts on the fourth section of the supplementary act of 1830, and the ninth count on the fourteenth section of the act of 1832, alleged, under different forms of statement, that the invoices on which the goods had been entered, and the packages containing them, had been made up with intent to evade or defraud the revenue.

The defendant's first plea was a denial that the goods had been seized for the same causes of forfeiture alleged in the information. The second plea set forth certain warrants issued under the sixty-eighth section of the act of 1799, authorizing the search for and seizure of goods entered without permits and concealed in certain stores in Baltimore, and alleged that the seizure was made under these warrants and not under any other authority or for any other cause than that which was contained in them. The third plea alleged that the goods in question were imported into New York, and duly entered and unladen under regular permits; that in order to the ascertainment of the duties, the collector caused them to be appraised according to their actual value at the time and place of exportation, and also caused one package out of every invoice, and one package out of every twenty packages

[Wood v. The United States.]

of each invoice, to be opened and examined; and that the packages so opened and examined were found and reported to the collector to be correctly and fairly invoiced and put up; that, after said examination and appraisement, the duties on the goods were duly ascertained and estimated by the collector, and paid by the claimant; that they were then delivered to the claimant and were shipped by him to his agents in Baltimore; and that, whilst in possession of said agents, they were seized by the collector of the port of Baltimore, as alleged in the information.

To each of these three first pleas the United States demurred generally, and the Court below being of opinion that they contained no matter of defence to the information, gave judgment in favour of the United States on the demurrers.

The remaining pleas were in succession applicable respectively one to each of the counts of the information, and were simple traverses of the respective causes of forfeiture alleged in them. Issue was joined on each of these pleas. These, which were the only issues of fact tried, resulted in a general verdict for the United States; on which a judgment of condemnation was afterwards entered as above stated.

It appeared by the bill of exceptions, that at the trial the United States, to maintain the issues on their part, read in evidence to the jury, four entries and invoices, which, it was admitted, were original entries and invoices, and had contained the twenty-two pieces of cloth against which the information was filed, and it was admitted that the numbers now on said pieces are the same that they were when imported, and have not been changed or altered; that the said four invoices were severally passed through the custom-house of the port of New York, according to the forms prescribed by the acts of Congress; and that, with one exception, the said twenty-two pieces were included in the packages designated by the collector of New York to be opened and examined. And it was further admitted and agreed that the duties on the amount of each of said four invoices had been paid, according to the prices therein stated; and that the goods therein mentioned had been delivered under regular permits to the claimant, who afterwards shipped the twenty-two pieces taken from several of the original packages included in said four invoices, to the consignment of Beadell and Company, at Baltimore, for sale.

44

SUPREME COURT.

It also appeared by the evidence on the part of the United States, that the claimant had entered at the port of New York, in the years 1839 and 1840, twenty-nine importations, of which those in question were a part. Twenty-eight of these importations, including the four in question, were entered by him, and upon his oath, as goods of which he was the actual owner, by having purchased them for exportation from the party by whom they were invoiced to him. Of these importations, the four which included the twenty-two pieces in question, were entered in 1839. Fifteen importations had been previously made, and ten were made after these four importations. All of the twenty-nine entries were accompanied by invoices. From the aggregate gross apparent cost of the goods in these invoices, some of which contained cloths alone, and others both cloths and cassimeres, there was a deduction in every invoice of five per cent., in some cases described to be a discount for cash, in others for measurement, and in two without stating for what. It was in proof by persons conversant with the British market, that, by the course of business in the places where the goods purported by the invoices to have been bought, no such discount or deduction was ever allowed on cassimeres; whether invoiced separately or included in the same invoice with cloths. It was also proved, by persons well acquainted with the same markets at the time of the alleged purchases, that the goods could not at that time have been fairly bought for less than prices which exceeded, by a large per centage, the prices mentioned in the invoices: and, with a view to show further, that the invoices were fictitious as to the prices, and that the discount was fictitious, it was proved that, in every one of his importations made after the seizure of the goods in question, the claimant acquiesced without appeal or objection, in the acts of the assistant appraisers of the customs and their assistants, in disallowing a similar discount or deduction of five per cent., and in raising the amount of their appraisements considerably beyond the prices mentioned in the invoices.

Before the evidence was given on the part of the United States, the counsel of the claimant objected to the admissibility in evidence of the invoices of the other goods imported by the claimants as above, before and after the importation of the goods in question, and of the oral testimony offered as above, in connection

with them. "But the Court overruled the objection, being of opinion that the question in the cause was a question of fraudulent intention; the inquiry being whether the invoices of the goods in controversy were made up with intent to evade the act of Congress, and defraud the revenue; and that the acts of the claimant in passing other goods through the custom-house are evidence."

This opinion formed the subject of the first exception of the claimant, on which he now insisted in this Court. The second exception was to the refusal of the Court below to give to the jury the instructions requested by the counsel of the claimant, and also to the instructions given by the Court to the jury.

To understand the character and extent of this exception, it is necessary to introduce the prayers of both parties for instructions to the jury, with the answers of the Court. The United States, by their counsel, prayed the Court for its opinion and direction to the jury :—

1. That the issues which the jury are sworn to try, involve no questions except upon the causes of forfeiture alleged and traversed; therefore, no question relating to the seizure of the goods is in issue, or in any respect material upon the pleadings in this case.

2. That if the jury find, from the evidence in this cause, that the invoices which contain the goods now in controversy, were made up with an intent to evade or defraud the revenue of the United States, the United States are entitled to condemnation of the said goods; although the jury should also find from the evidence, that the said goods have been passed through the custom-house, at New York, by the collector thereof, or by the appraisers, or other officers of the customs, and the duties calculated thereon been paid, or secured to be paid, and the said goods delivered by the said collector to the importer.

3. That there has been shown, on the part of the United States, probable cause for the prosecution, under the third, sixth, seventh, eighth, and ninth counts of the information; and, therefore, under the seventy-first section of the act of 2d March, 1799, the burden of proof lies upon Thomas Wood, Jr., the claimant; and it is incumbent on him to prove to the jury that the charges in the said five counts of the information are untrue, that is, to prove that

the goods in question were invoiced according to their actual cost at the place of exportation, and that the invoices and packages were not made up with intent to evade or defraud the revenue.

4. The burden of proof being upon the claimant, to prove that the invoices were not made up with intent to defraud the revenue, that it is not sufficient for him to rely upon the invoices merely, as proving their truth and fairness.

5. The burden of proof being upon the claimant, it is incumbent on him to prove to the jury the actual cost of the goods in question, and that he does not relieve himself of this burden of proof by evidence of the mere value of said goods, except so far as such value may tend to show actual cost.

And the claimant, by his counsel, prayed the Court to give the following instructions to the jury:—

1. That under a true construction of the seventy-first section of the act of Congress of the 2d of March, 1799, it is incumbent on the United States to show, by evidence, a seizure in pursuance of said act, or of other acts, if any, regulating seizures, and that in the absence of such evidence, the onus probandi cannot be thrown upon the claimant by proof of probable cause; proof of probable cause of such seizure being made by said section a prerequisite which must be complied with.

2. That upon the evidence offered by the United States in this cause, the onus probandi does not lie upon the plaintiff under the provisions of the seventy-first section of the act of 1799, because no probable cause has been shown to the Court for the prosecution in this case.

3. If the jury find from the evidence that the goods mentioned in the third count of the information were entered in the office of the collector of the collection district of New York, in the southern district of New York, and were unladen and delivered from the vessels in which they were imported, under permits granted by said collector, who caused the said goods, wares and merchandise to be examined, and that after such examination, the duties on the same were ascertained and estimated by said collector, and paid by the said claimant, and the said goods were, by the authority of the collector delivered to the said claimant; and if the jury further believe that the claimant caused the original packages in which said goods were imported to be broken up, and shipped

said goods, forming a part of said packages, to his agents in Baltimore for sale, and that said goods were seized after their actual arrival in Baltimore, and not before; that the United States are not entitled to recover under the third count of the information.

4. That the United States are not entitled to recover under the said third count of the information, because the sixty-sixth section of the act of Congress, passed on the 2d of March, 1799, entitled "An act to regulate the collection of duties on imports and tonnage," was not in force when the goods mentioned in said third count were imported.

5. That if the jury believe, from the evidence, that the collector of the port of New York caused at least one package out of every invoice, and one package at least out of every twenty packages of each invoice containing the goods mentioned in the sixth and seventh counts of the information, to be opened and examined; and that said packages were before such examination designated on the several invoices in which they were respectively included; and that said collector did not deem it necessary that a greater number of packages than those so designated should be opened and examined. And if the jury further find that upon such opening and examination, the goods were, in the judgment of the examining officer, found to correspond with said invoices, and not to be falsely charged in said invoices; and that after the said examination, the duties on said goods were ascertained and estimated by said collector, and paid by the claimant, and said goods were delivered to the claimant, who afterwards sent them to his agents in Baltimore for sale; and that the seizure on which said information is founded, was made after said goods had arrived in Baltimore; that then the United States are not entitled to recover under the said sixth count, so far as the same charges the invoices to have been found to be made up with intent, by a false valuation or extension, to evade or defraud the revenue of the United States; not under the said seventh count.

6. That there is no evidence in the cause from which the jury can find that the packages in which the goods mentioned in the sixth and eighth counts of the information were imported into New York, were found upon examination at the district of Maryland, to be made up with intent to evade and defraud the revenue of the United States, and that therefore the United States are not

entitled to recover under said eighth count, nor under said seventh count, so far as the same charges the packages to be made up with such fraudulent intent.

7. That the United States are not entitled to recover upon either of the said sixth, seventh and eighth counts of said information, because the fourth section of the act of Congress, passed on the 28th of May, 1830, entitled "An act for the more effectual collection of the import duties," was not in force when the goods mentioned in said sixth, seventh, and eighth counts were imported.

8. That there is no evidence in the cause from which the jury can find that the packages or either of them in which the goods mentioned in the ninth count of the information were imported, were opened and examined at the district of Maryland on the day mentioned in said count, or at any other time, and were found to be made up with intent to evade or defraud the revenue; and that therefore the United States are not entitled to recover upon said ninth count.

But the Court refused to give the instructions prayed for, both by the United States and the claimant, and rejected the same, and each and every of them; but gave the following instructions and directions to the jury.

1. That the issues formed, and which the jury are sworn to try, involve no question except upon the causes of forfeiture alleged in the information and traversed; and therefore no question relating to the mere seizure of the goods is in issue or material under the pleadings in this cause.

2. If the jury shall find from the evidence in the cause, that the invoices of the goods in question were made up with intent, by a false valuation, to evade or defraud the revenue, the plaintiffs are entitled to recover; although the jury should also find from the evidence, that the said goods have been passed through the custom-house at New York, by the collector thereof, and the duties calculated by him on said invoices shall have been paid or secured to be paid, and the said goods delivered by said collector to the importer.

3. That there has been shown on the part of the United States, probable cause for the present prosecution under the third count, and the sixth, seventh, eighth, and ninth counts in the information,

and that the burden of proof lies, under the seventy-first section of the act of the 2d of March, 1799, upon Thomas Wood, Jr., the claimant; and that it is incumbent upon him to prove to the jury that the charges in the said five counts are untrue; that is, to prove that the goods in question were invoiced according to their actual cost at the port of exportation, and that the invoices and packages were not made up with intent to evade or defraud the revenue.

4. That the burden of proof being upon the said Thomas Wood, Jr., under the seventy-first section of the act of 1799, and the fifteenth section of the act of the 14th of July, 1832, it is incumbent upon him to prove to the jury the actual cost of the twenty-two pieces of cloth in the invoices and entries stated to have been purchased by him; and that the value of the goods at the times or dates of the seizure, or of any other subsequent times are not material, except so far as they may assist or tend to enable the jury to ascertain the prices at the respective periods of purchase or shipment.

5. That the burden of proof being upon the claimant to prove that the invoices were not made up with intent to defraud the revenue, it is not sufficient for him to rely upon the invoices themselves merely as proving their own truth and fairness.

The case was submitted to the Court by Mr. Meredith and Mr. Crittenden, for the plaintiff in error, and Mr. Legaré, the attorney-general, and Mr. Cadwalader, for the United States; the counsel for the parties furnished printed arguments to the Court.

The counsel of the plaintiff in error contended upon the demurrers to the first three pleas:

1. That there is no right of seizure after goods have been passed through the custom-house, according to all the requisitions of the revenue laws—they have been examined, inspected, and appraised—the duties ascertained and paid, and the goods themselves delivered to the owner or importer, or his agent; and that they can never afterwards be pursued as forfeited for any alleged or pretended fraud or imposition upon the custom-house: that the right in such cases to claim and seize as a forfeiture, was limited to the transit of the goods through the custom-house, and

while they were under the hands of its officers, for their inspection, examination, and appraisement.

To pursue and seize them afterwards, when they have been introduced into the community and into the market, with all the authentic sanctions of the custom-house, is a very different thing. If Congress had intended such a course, it would have declared itself explicitly, and prescribed, if not some restraint, at least some form and mode for the exercise of a power so tremendous and fearful. And as there is no such legislation in any of the acts of Congress, it cannot be held that goods thus situated are liable to seizure or forfeiture.

2. That, even if there be a right of seizure under such circumstances, the seizure actually made must be a good subsisting seizure when the information is filed.

3. That the seizure made in this case was defective and irregular.

On the first exception, the plaintiff in error contended that the evidence offered by the United States of importations made by the claimant, subsequent to the importations charged by the information to have been fraudulent, was inadmissible.

On the second exception the plaintiff in error contended:

1. That, assuming upon the evidence that the goods were entered at the New York custom-house, and were unladen and delivered under permits granted by the collector, who caused them to be examined, and upon such examination ascertained and received the duties, and delivered the goods to the claimant, who afterwards broke up the original packages, of which said goods formed a part, and shipped them to Baltimore, for sale, where they were seized. The jury ought to have been instructed, that if they believed such evidence, to find a verdict for the claimant on the third count of the information; and that the Court erred in refusing to give such instruction.

2. That the third count of the information cannot be supported, because the sixty-sixth section of the duty act of March, 1799, is repealed, and that the Court ought so to have instructed the jury.

3. That, assuming upon the evidence that the collector of New York caused at least one package out of every invoice, and one package at least out of every twenty packages of each invoice of goods mentioned in the sixth and seventh counts of the infor-

[Wood v. The United States.]

mation to be opened and examined, and that said packages were, before such examination, designated by the collector on the several invoices in which they were respectively included; that, upon such opening and examination, the goods were found to correspond with the invoices, and not to be falsely charged; that, after said examination the duties were ascertained and paid, and the goods delivered to the claimant, who sent them to his agents at Baltimore for sale, where the seizure was made; that the jury ought to have been instructed, provided they believed said evidence, that the United States were not entitled to recover under the sixth count, so far as the same charges the invoices to have been found to be made up with intent, by a false valuation or extension, to evade or defraud the revenue; nor under the seventh count; and that the Court erred in refusing so to instruct the jury.

4. That there was no evidence to support the eighth count in the information, nor the sixth count, so far as the same charges the packages to have been made up with a fraudulent intent.

5. That the fourth section of the act of Congress of the 28th May, 1830, is repealed, and consequently the sixth, seventh, and eighth counts in the information cannot be supported, and that the Court ought to have so instructed the jury.

6. That there was no evidence in the cause to support the ninth count of the information, and that the Court erred in not so instructing the jury.

For the United States, the attorney-general and Mr. Cadwalader contended, that the leading idea of all the arguments on the other side, that the United States are concluded by the passing of the goods through the custom-house, after an appraisement, and on payment of duties according to that appraisement, in all cases whatsoever, and even of admitted fraud; that the idea was that the United States had adopted a sort of Spartan system of permitting fraud, so it be cleverly enough executed to escape detection at the custom-house, no matter how clearly it may be exposed afterwards.

But there was, happily, no plausibility in the argument, that because there are collectors, appraisers, and inspectors, perpetually on the watch to detect any violation of the revenue-law, therefore no other detection of it can be of any avail; that be-

2 G 2                45

cause so many statutes have been passed with a view, in the ordinary course of things, to insure the payment of the public dues, therefore a fraud, which at common law, and in all law, taints and vitiates, and nullifies every civil proceeding, is permitted, because it has been perpetrated by some extraordinary contrivance, and in spite of those statutes.

As to the information, it was argued that the five counts upon which the judgment of forfeiture was entered were all good and sufficient. But, if this were otherwise, the judgment would be affirmed, if any one count of the information were valid. The proceeding is, in rem, for the enforcement of a forfeiture, and if one cause of forfeiture is effectual, many cannot be more effectual for the purpose. A condemnation upon one cause of forfeiture is an adjudication that the property is in the United States and is the consummation and merger of the entire prosecution. Under cumulative forfeitures, however numerous, more cannot be done than under a single forfeiture, to ascertain that the claimant's original property is divested and is become the property of the United States. In Locke v. The United States, 7 Cranch, 344, the condemnation was sustained upon one of many counts, without inquiry as to the sufficiency of the others, to which objections had been made.

The rest of the argument on behalf of the United States, embraced the following heads:

I. The sixty-sixth section of the act of 1799 is in force, and is the only act in force under which individual pieces of goods, falsely invoiced, are made liable to forfeiture, without reference to the manner of making up the entire invoice or package containing them; and is, also, the only act under which the United States can proceed in a personal action, to recover the value of the things forfeited, or such portion of them as cannot be found and seized.

II. The fourth section of the act of 1830 is in force for two purposes, notwithstanding the repealing clause of the fourteenth section of the act of 1832.

1. Where an invoice is made up with intent to defraud the revenue, not merely the pieces falsely invoiced, but the whole invoice is forfeited.

2. Where a package, mentioned in the invoice, is made up

with an evasive or fraudulent intent, in respect to the invoice, the whole package is forfeited.

III. Under these acts, the enforcement of the forfeiture is not dependent upon the manner in which the goods may happen to have been seized, or the reasons for the seizure which may happen to have been known, or to have been assigned at the time of making it. The filing of an information by the United States is an adoption by them of the seizure, and refers the prosecution not to the seizure, but to the antecedent causes of forfeiture alleged in the information. Matters that involve the regularity or method of the seizure cannot be put in issue, even under a plea in abatement, which would be the only appropriate method of raising the questions; much less can they be pleaded in bar, or together with pleas in bar.

IV. The power of the United States to enforce a forfeiture incurred under these acts, is not dependent upon the acts or omissions of the appraisers and other officers of the customs, who are required to ascertain or liquidate and receive the pecuniary amount of duties for which the importer and goods are liable.

The two subjects of forfeiture and pecuniary liability for duties are, generally speaking, subjects of distinct independent statutory provisions; and different parts of the statutes are to be considered distributively, with reference to each respectively.

When a forfeiture has been incurred by reason of a fraud, not even the Secretary of the Treasury and collector of the customs are authorized to remit or mitigate it, much less the appraisers and other subordinate officers of the collection of the revenue.

V. The seventy-first section of the act of 1799 having enacted that, in informations where any seizure shall be made pursuant to that act, the burden of proof shall lie upon the claimant where probable cause for the prosecution has been shown to the Court, the probable cause for the prosecution required to be shown, is referrable to evidence pertinent to the issues upon causes of forfeiture set forth in the information, and not merely to the original grounds of seizure by officers of the revenue before information filed, as contended for on behalf of the plaintiff in error.

VI. Probable cause for the prosecution was shown on the part of the United States—

1. By proof of the gross disproportion of the cost stated in the invoices and the actual market price of the period of the pretended purchases.

2. By proof of the insertion as to both cloths and cassimeres, of a pretended discount or allowance for measure, which, if not fictitious as to both cloths and cassimeres, must have been so as to cassimeres.

3. By the evidence of which the admissibility is involved in the next point, and under the bill of exceptions to testimony.

VII. As a part of the necessary circumstantial evidence admitted in all cases of fraud, it was competent to prove that all the importations of this claimant, including those before, as well as those since the importations in question were attended with the same circumstances of a pretended discount or deduction for measure, and that on all of those which have been entered since the commencement of the present proceedings, he has acquiesced without appeal or objection in a liquidation of the duties on the footing of disallowing this deduction, and of a still further addition, by the appraisements, to the cost of prices stated in the invoices.

This evidence was competent for several reasons:

1. A comparison of the invoices with those in question, shows that the goods are all, or nearly all, from the same parties who made out the invoices of the goods in question, and the packages are marked so as to indicate that they are part of a connected series of importations.

2. To prove the fictitious character of the series of importations of which these were a part.

3. To disprove the possibility of their having been a casual or fortuitous discount or allowance in the particular case in question, and to indicate the intent of the parties on both sides of the water, to make out the invoices fictitiously and evasively in respect to the revenue

4. To prove a systematic combination for this purpose, between the foreign exporter or party making out the invoices, and the importer who entered the goods upon them.

.5. To disprove the reality of the discount by the acquiescence of the plaintiff in error in its rejection in subsequent cases.

Mr. Justice STORY delivered the opinion of the Court.

This is a writ of error from the judgment of the Circuit Court of the district of Maryland, affirming, pro formâ, a judgment of the District Court of the same district.

The original suit was a libel of information, in rem, upon a seizure, upon land, in the said district, of twenty pieces of cloths imported into the United States, and alleged to be forfeited. The libel contained a number of counts; but that alone which is necessary to be here stated, is the count founded upon the sixty-sixth section of the revenue collection act of 1799, chapter 128, which declares, "That if any goods, wares, or merchandise, of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, wares, and merchandise, or the value thereof, to be recovered of the person making the entry, shall be forfeited." The count stated that the goods in controversy were not invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties. Various pleas were put in, to some of which there were demurrers, and upon others issue was joined, upon which a trial was had by a jury. The jury found a verdict for the United States. The claimant (as well as the United States) prayed certain instructions to the jury which were refused, and the Court gave certain instructions to which the claimant excepted; and the cause came before the Circuit Court upon the bill of exceptions, filed by the claimant, as well to the refusal as to the instructions of the Court. At the trial it appeared that the goods in question had been originally imported into the port of New York, and were there duly entered and landed, and the duties paid upon the invoices produced by the claimant at the custom-house. They were afterwards transmitted to Baltimore, and there seized in the stores of certain persons having the custody thereof for the claimant, under a search warrant of a magistrate, procured for that purpose. The validity of the original seizure is contested in some of the pleadings; and

this seems to have been insisted upon before the jury as one of the grounds of defence.

At the trial, to establish the fraud in the invoices, beside other evidence, the counsel for the United States offered in evidence sundry other invoices of cloths and cassimeres, twenty-nine in number, imported into the port of New York by the complainant, or consigned to him, for the purpose of showing the fraudulent intention of the claimant in those importations, as well as in the present. An objection was taken to the admissibility of this evidence, which was overruled by the Court; and the evidence was admitted: and this constitutes one of the exceptions in the cause.

The District Judge, after the whole evidence was gone through, gave the following instructions to the jury, which involve the whole merits of the controversy:

1. That the issues formed, and which the jury are sworn to try, involve no question except upon the causes of forfeiture alleged in the information and traversed, and therefore no question relating to the mere seizure of the goods is in issue or material under the pleadings in this cause.

2. If the jury shall find from the evidence in the cause, that the invoices of the goods in question were made up with intent, by a false valuation to evade or defraud the revenue, the plaintiffs are entitled to recover, although the jury should also find from the evidence that the said goods have been passed through the custom-house at New York, by the collector thereof, and the duties calculated by him on said invoices shall have been paid or secured to be paid, and the said goods delivered by said collector to the importer.

3. That there has been shown on the part of the United States, probable cause for the present prosecution under the third count, and the sixth, seventh, eighth, and ninth counts in the information, and that the burden of proof lies under the seventy-first section of the act of the 2d of March, 1799, upon Thomas Wood, Jr., the claimant, and that it is incumbent upon him to prove to the jury that the charges in the said five counts are untrue; that is, to prove that the goods in question were invoiced according to their actual cost at the port of exportation, and that the invoices and packages were not made up with intent to evade or defraud the revenue.

4. That the burden of proof being upon the said Thomas Wood, Jr., under the seventy-first section of the act of 1799, and the fifteenth section of the act of the 14th of July, 1832, it is incumbent upon him to prove to the jury the actual cost of the twenty-two pieces of cloth in the invoices and entries stated to have been purchased by him, and that the value of the goods at the times or dates of the seizure or of any other subsequent times are not material, except so far as they may assist or tend to enable the jury to ascertain the prices at the respective periods of purchase or shipment.

5. That the burden of proof being upon the claimant to prove that the invoices were not made up with intent to defraud the revenue, it is not sufficient for him to rely upon the invoices themselves merely as proving their own truth and fairness.

In respect to the point made at the bar, as to the validity of the original seizure, or of the causes thereof, we are of opinion that the first instruction of the District Judge was entirely correct. It is of no consequence, whatsoever, what were the original grounds of the seizure, whether they were well founded or not, if in point of fact the goods are by law subjected to forfeiture; for the United States are not bound down by the acts of the seizors to the causes which influenced them in making the seizure, nor by any irregularity on their part in conducting it, if in point of fact the seizure can now be maintained as founded upon an actual forfeiture thereof at the time of the seizure; and therefore it was rightly held by the judge, that no question arose upon the issues which the jury were to try, except upon the causes of forfeiture alleged in the information.

The remarks just made constitute an answer to the argument upon the demurrers to the two first pleas of the claimant; for, as has been already suggested, if a seizure has been actually made, and is a continuing seizure; it is no bar to proceedings thereon that the cause of forfeiture relied on is not the same upon which the seizure was originally made. It is sufficient for the United States that it adopts the seizure and now proceeds for a good cause of forfeiture, although utterly unknown to the original seizors.

Passing from this, the next point presented for consideration is, whether there was an error in the admission of the evidence of

fraud deducible from the other invoices offered in the case. · We are of opinion that there was none. The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent, or motive in the particular act, directly in judgment. Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act taken by itself may not be decisive either way; but when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty. The treatise on evidence by · Mr. Phillipps and Mr. Starkie contain many illustrations to this effect. See Starkie on Evidence, vol. 1, p. 64, vol. 2, p. 220, 221, second London edit., 1833; Phillipps on Evidence, by Cowen, vol. 1, ch. 7, s. 7, p. 179, 180, vol. 2. p. 452, note 333, p. 465, note 352, edit. 1839. ·

They constitute exceptions to the general rule, excluding evidence not directly comprehended within the issue; or rather, perhaps, it may with more certainty be said, the exception is necessarily imbodied in the very substance of the rule: for whatever does legally conduce to establish the points in issue is necessarily embraced in it, and therefore a proper subject of proof; whether it be direct, or only presumptive. This doctrine was held in a most solemn manner in the case of the King v. Wylee, 4 Bos. and Pull. 92, where upon an indictment for 'disposing and putting away a forged bank note, knowing it to be forged, evidence was admitted of other forged notes having been uttered by the prisoner, in order to prove his knowledge of the forgery. The same doctrine has been held in cases of the uttering of bad money and spurious notes; and also in cases of conspiracy. The same doctrine was affirmed and acted upon by this Court in the case of the United States v. Wood, 14 Peters' Rep. 430, in the case of a prosecution for perjury.

Cases of fraud present a still more stringent necessity for the application of the same principle; for fraud being essentially a matter of motive and intention, is often deducible only from a great variety of circumstances, no one of which is absolutely

decisive; but all combined together may become almost irresistible as to the true nature and character of the transaction in controversy. The case of Irving v. Motley, 7 Bing. Rep. 543, turned upon this very point. There the action was trover to recover back goods which had been purchased by an agent for his principal by means of a fraud. In order to establish the plaintiff's case, it became necessary to show that other purchases had been made by the same agent for the same principal, under circumstances strongly presumptive of a like fraud; no doubt was entertained by the Court of the admissibility of the evidence; and the main point urged at the bar was that the agent should himself have been called to establish the purchases, but this objection was overruled, and the jury, having found a verdict for the plaintiff, the Court gave judgment in his favour.

Indeed, it is admitted by the counsel for the plaintiff in error in the case before us, that it is a general principle of law that whenever a fraudulent intention is to be established, collateral facts tending to show such intention are admissible proof; but the objections taken are, first, that when the proof was offered no suitable foundation had been laid for its admission, and that the cause was launched with this proof; and secondly, that the proof related to importations after, as well as before the particular importation in question. We do not think either of these objections maintainable. The fraud being to be made out in evidence, the order in which the proof should be brought to establish it, was rather a matter in the discretion of the Court, than of strict right in the parties. It is impossible to lay down any universal rule upon such a subject. Much must depend upon the posture and circumstances of the particular case; and at all events, if the proof be pertinent and competent, the admission of it cannot be matter of error. The other objection has as little foundation: for fraud in the first importation may be as fairly deducible from other subsequent fraudulent importations by the same party, as fraud would be in the last importation from prior fraudulent importations. In each case the quo animo is in question, and the presumption of fraudulent intention may equally arise and equally prevail.

The second instruction of the Court is, in effect, that if the invoices of the goods now in question were fraudulently made,

by a false valuation to evade or defraud the revenue, the fact that they had been entered and the duties paid or secured at the custom-house at New York, upon those invoices, was no bar to the present information. This instruction was certainly correct, if the sixty-sixth section of the revenue collection act of 1799, ch. 128, now remains in full force and unrepealed: for it can never be permitted that a party who perpetrates a fraud upon the custom-house, and thereby enters his goods upon false invoices and false valuations, and gets a regular delivery thereof upon the mere payment of such duties as such false invoices and false valuations require, can avail himself of that very fraud to defeat the purposes of justice. It is but an aggravation of his guilt that he has practised imposition upon the public officers, as well as perpetrated such a deliberate fraud. The language of the sixty-sixth section completely covers such a case. It supposes an entry at the custom-house upon false invoices with intent to evade the payment of the proper duties, and the forfeiture attaches immediately upon such an entry upon such invoices with such intent. The success of the fraud in evading the vigilance of the public officers, so that it is not discovered until after the goods have passed from their custody, does not purge away the forfeiture; although it may render the detection of the offence more difficult and more uncertain. The whole argument turns upon this, that if the custom-house officers have not pursued the steps authorized by law to be pursued by them, by directing an appraisement of the goods in cases where they have a suspicion of illegality, or fraud, or no invoices are produced, but their suspicions are lulled to rest; the goods are untainted by the forfeiture the moment they pass from the custom-house. We cannot admit that such an interpretation of the objects or language of the sixty-sixth section is either sound or satisfactory. The same reasoning governs the ruling of the Court, upon the demurrer to the third plea.

The question then arises whether the sixty-sixth section of the act of 1799, ch. 128, has been repealed, or whether it remains in full force. That it has not been expressly or by direct terms repealed is admitted; and the question resolves itself into the more narrow inquiry, whether it has been repealed by necessary implication. We say by necessary implication, for it is not suffi-

cient to establish that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative, or auxiliary. But there must be a positive repugnancy between the provisions of the new laws, and those of the old; and even then the old law is repealed by implication only pro tanto, to the extent of the repugnancy. And it may be added, that in the interpretation of all laws for the collection of revenue, whose provisions are often very complicated and numerous to guard against frauds by importers, it would be a strong ground to assert that the main provisions of any such laws sedulously introduced to meet the case of a palpable fraud, should be deemed repealed, merely because in subsequent laws other powers and authorities are given to the custom-house officers, and other modes of proceeding are allowed to be had by them before the goods have passed from their custody, in order to ascertain whether there has been any fraud attempted upon the government. The more natural, if not the necessary inference in all such cases is, that the legislature intend the new laws to be auxiliary to and in aid of the purposes of the old law, even when some of the cases provided for may equally be within the reach of each. There certainly, under such circumstances, ought to be a manifest and total repugnancy in the provisions to lead to the conclusion that the latter laws abrogated, and were designed to abrogate the former.

Down to the act of the 28th of May, 1830, ch. 147, it does not appear to us that any act of Congress whatsoever has been cited at the argument which can, upon a reasonable construction, be deemed to repeal the sixty-sixth section of the act of 1799. The act of 1830, in the fourth section, provides that the collectors of the customs shall cause at least one package out of every invoice, and one package at least out of every twenty packages of each invoice, and a greater number, should he deem it necessary, of goods imported, to be opened and examined; "and if the same be not found to correspond with the invoice, or to be falsely charged in such invoice, the collector shall order, forthwith, all the goods contained in the same entry to be inspected; and if such goods be subject to an ad valorem duty, the same shall be appraised; and if any package shall be found to contain any article not described in the invoice, or if such package or invoice be made up

with intent, by a false valuation or extension, or otherwise, to evade or defraud the revenue, the same shall be forfeited." The section then proceeds to repeal the thirteenth section of the act of the 1st of March, 1823, ch. 149, without saying one word as to any repeal of any section of the act of 1799, ch. 128. Now, if here the rule be properly applicable, that "Expressio unius est exclusio alterius," the presumption of any repeal by implication of the sixty-sixth section of the act of 1799, would seem to be completely repelled.

Besides, the fourth section of the act of 1830, is not pointed at the same class of cases as the sixty-sixth section of the act of 1799. It obviously and naturally, in its whole provisions, applies solely to cases where the packages have been opened and examined by order of the collector, and upon such examination if any article is found not contained in the invoice, or the package or invoice is found to be made up with an intent by a false valuation, or extension, or otherwise, to evade or defraud the revenue, and then the same are declared to be forfeited. It would be a strong doctrine to affirm that where no such examination or detection had taken place at the custom-house, but the same had passed from the public custody unopened, the forfeiture under this provision did apply, or was designed to apply. The fourteenth section of the act of the 14th of July, 1832, ch. 224, has in some measure qualified and mitigated the effect of the fourth section of the act of 1830; by providing, that whenever upon opening and examination of any package or packages of imported goods, composed wholly or in part of wool or cotton, (under which predicament the present goods fall) the goods shall be found not to correspond with the entry thereof at the custom-house, and if any package shall be found to contain any article not entered, such article shall be forfeited; or if the packages shall be made up with intent to evade or defraud the revenue, the package shall be forfeited; and so much of the fourth section of the act of 1830, as prescribes a forfeiture of goods found not to correspond with the invoice thereof, is thereby expressly repealed.

In truth, however, there is not the slightest repugnancy between these sections of the act of 1830 and 1832, and the sixty-sixth section of the act of 1799. The former apply only to cases where there has been an opening and examination of the packages imported, before they have passed from the custody of the

custom-house; and in the course of such examination, the fraud-ulent intent in the making up of the package or invoice has been detected; and, thereupon, it declares the same to be forfeited. Now, the sixty-sixth section of the act of 1799, may cover the same cases, but the forfeiture is the same; and, therefore, the provisions in such a case may well be deemed merely cumulative, and auxiliary to each other. But the sixty-sixth section is not confined to such cases; on the contrary, it covers all cases where the goods have been entered, and have passed from the custom-house without any examination or detection of the false invoices: it is, therefore, much more broad in its reach. To enforce a for-feiture under the sections of the acts of 1830 and 1832, it would be necessary to allege, in the information or libel, all the special circumstances of the examination and detection of the fraud, under the authority of the collector; for they constitute a part of the res gestæ, to which the forfeiture is attached. But under the sixty-sixth section no such allegations would be necessary or proper, as the forfeiture immediately attaches to every entry of goods falsely and fraudulently invoiced; without any reference whatever to the mode, or the circumstances under, or by which, it is ascertained.

Besides, the sixty-sixth section not only provides for a for-feiture of the goods, but in the alternative, for a forfeiture of the value thereof, to be recovered of the person making the false entry. No such provision exists in the acts of 1830 or 1832. It is impossible, therefore, successfully to contend that the sixty-sixth section is repealed in toto, since no subsequent act covers all the cases provided for by it. It is, indeed, not a little singular that the argument that it is repealed by implication must found self upon the very ground that the present case is not covered by the other acts. It must in effect assert, that the repeal ought to be implied in all cases where the goods have passed from the cus-tom-house without detection of the fraud, simply because if they had been examined, and the fraud detected there, they might, in that case, and in that case only, have been subjected to forfeiture, which would at most only establish a repeal pro tanto. In our opinion, there is no just foundation for the argument, under any aspect. The provision in the sixty-sixth section is intended to suppress frauds upon the revenue. The other acts are designed

2 H 2

SUPREME COURT.

to be auxiliary to the same important purpose—there is no repug-
ancy between the provisions; and to construe the latter as repeal-
ing the former, would be to construe provisions to aid in the
detection of fraud, in such a manner as to promote fraud, by cut-
ting down provisions of a far more general and important
character, and essential to the security of the revenue. It seems
to us that no Court of justice is at liberty to adopt such a mode
of interpretation of the revenue laws, unless driven to it by a
stern and irresistible necessity.

This reasoning might be expanded by a more minute compari-
son of the various acts of Congress with each other, and of the
particular language used in each with reference to this subject.
But, in our judgment, it is wholly unnecessary, because, after all,
the whole question must rest upon the broad grounds already
stated. We think the second instruction given by the District
Judges entirely correct.

The three remaining instructions turn upon the point whe-
ther, under the circumstances, the onus probandi as to the
facts stated in those instructions was upon the claimant. Upon
this we do not entertain the slightest doubt. The seventy-first
section of the act of 1799, declares that, "in actions, suits, or
informations to be brought, where any seizure shall be made
pursuant to this act, if the property be claimed by any person, in
every such case, the onus probandi shall lie upon such claimant;"
and it is afterwards added, "but the onus probandi shall lie on
the claimant only where probable cause is shown for the prose-
cution, to be judged of by the Court before whom the prosecu-
tion is had."

Probable cause must, in this connection, mean reasonable
ground of presumption that the charge is, or may be, well
founded; and we think, in this case, that there was abundance
of proof not only to justify such a reasonable presumption, but
to give it solid weight; and, in the absence of all countervail-
ing evidence, which was completely within the reach of the
claimant if the invoices were bonâ fide, to give it a force difficult
to be resisted. Upon the whole, our opinion is, that there is no
error in the judgment of the Circuit Court, affirming the judg-
ment of the District Court, and therefore it will be affirmed by
this Court.