SIXTY-FIVE TERRA COTTA VASES, etc.

(*District Court, S. D. New York.* February 20, 1882.)

1. DUTIES ON IMPORTS—FREE LIST—COLLECTIONS OF ANTIQUITIES.

   The item in the "free list" of section 2505, Rev. St., making free "cabinets of coins, medals, and all other collections of antiquities," embraces all "collections of antiquities," within the ordinary meaning of those words. It is not limited to "collections of antiquities" *ejusdem generis* with coins and medals. This item of the free list, dating back to the tariff of 1846, has ever since continued without change, and must be held to have the same meaning now that it had then.

2. SAME—EXTENSION OF FREE LIST—ACT OF 1870 CONSTRUED.

   The addition to the free list, in the act of 1870, of the item "collections of antiquity, specially imported, and not for sale," (16 St. at Large, p. 265, § 22,) is by that act declared to be designed to extend the free list. It cannot, therefore, by implication, be suffered to change the meaning of the other item, which still remains in the free list, respecting "collections of antiquities," nor make them dutiable now, when not dutiable before.

3. STATUTORY CONSTRUCTION—PROVISIONS NOT REPUGNANT.

   Though this construction leaves this item of the act of 1870 superfluous, the practice and the policy of the government, for at least 24 years previous, admitting "collections of antiquities" free, should not be reversed except upon some new provision repugnant to the old; and this item in the act of 1870 is not repugnant.

4. ARTICLES EXEMPT FROM CUSTOMS DUTIES.

   The articles in question being held to be exempt from duty, no legal injury from the claimant's acts resulted to the United States, and a verdict was directed for the claimant.

This was an information filed for a condemnation of a "collection of antiquities" seized by the customs officer for alleged fraudulent importation with the intent to evade payment of legal duties.

It was admitted upon the trial that the articles in question constituted a "collection of antiquities." They were imported from France in October, 1878, designed for sale. Being supposed to be free of duties they were entered as free and warehoused. A question being raised as to their being dutiable, the case was referred to the treasury department, which, after considerable controversy, ruled that they

were dutiable; and in June, 1879, this determination was sustained in an opinion of the attorney general. 16 Opinions Atty. Gen. 354. Thereupon the goods were withdrawn for exportation to Canada by Fenardent, the agent of the owner, to whom they had been consigned, and upon this exportation the agent swore that they were not designed for any place within the United States. At Montreal the owner, Mr. De Morgan, took charge of the collection. Not long afterwards they were again imported into the United States, through his brokers, by way of Rouse's Point, and entered as "not for sale." On arrival at New York they were exhibited as the De Morgan collection, ticketed "not for sale." Some of the articles, nevertheless, were sold to the Pennsylvania Academy of Fine Arts, in Philadelphia, and sent there after being again sent to and imported from Montreal. The rest of the articles, being discovered to be the same that had formerly been assessed for duties, were seized in this proceeding for an alleged fraudulent attempt to evade the legal duties.

Upon the close of the evidence, and the admission by the government that the articles constituted a "collection of antiquities," a verdict was directed for Mr. De Morgan, the claimant, upon the grounds stated in the following opinion of the court.

*William C. Wallace*, Asst. Dist. Atty., for the United States.

*Coudert Brothers*, for claimant.

BROWN, D. J. During the recess I have given the questions in this case such examination as the short time has allowed, and feel compelled to direct a verdict for the claimant, for reasons which I will briefly state. The articles claimed to be forfeited confessedly come within the description of a "collection of antiquities." They were exhumed by or under the direction of the claimant, De Morgan, were imported here by him from France, and designed for sale; but, owing to a controversy with the custom-house, they were re-exported to Canada, and afterwards again imported by way of Rouse's Point, and exhibited as the De Morgan collection, "not for sale." Notwithstanding this, it is proved that a number of the articles were sold by De Morgan's agent, and I shall assume, for the purpose of this decision, that the collection was in fact designed to be sold if purchasers could be found. Section 2505 of the Revised Statutes enumerates the articles of "the free list" which it declares shall be exempt from duty. Upon this list I find two distinct clauses relating to articles of this character—the first, "cabinets of coins, medals, and all other collections of antiquities." In a subsequent portion of the free

list we find "collections of antiquity, specially imported, and not for sale."

Assuming that the articles in question were originally imported for sale, and were in fact designed to be sold, upon the second importation from Canada, it is claimed on behalf of the government that they are not covered as free by either of the sections of the free list quoted—*i. e.*, not by the last, since they were in fact for sale; and not by the first, on the ground that that clause is to be interpreted *ejusdem generis* as referring to articles similar to "coins or medals." The reason urged for such a limited construction of the first clause above quoted is in order to give some substantial effect to the latter clause. If these two provisions had been originally enacted together as parts of one statute, there would be ground for this construction; but an examination of the prior legislation satisfies me that this construction is unsound in this case. The second provision, "collections of antiquity, specially imported, and not for sale," was first enacted by the act of July 14, 1870, (16 St. at Large, 265,) which, by section 22, declares that "*in addition* to imported articles now by law exempt from duty, and not herein otherwise provided for, the following articles hereinafter enumerated and provided for shall *also* be free," among which is found "collections of antiquity, specially imported, and not for sale." This section, it will be noticed, is expressly declared to be designed to extend "the free list" to additional articles, and it does so to a large extent. There is nothing in section 22, or any other portion of the act of 1870, "otherwise providing" for the articles in question. If they were free by the pre-existing law, there is nothing in the act of 1870 which declares them dutiable, and the declared general purpose of that act to extend "the free list," and not to restrict it, should prevent any construction which would make free goods dutiable by implication merely.

The clause, first quoted from "the free list," viz., "cabinets of coins, medals, and all other collections of antiquities," has existed without change, and in the same identical words, ever since the tariff of 1846, (9 St. at Large, 49.) It was re-enacted in the tariff of 1857, (11 St. at Large, 194,) and in the tariff of 1861, (12 St. at Large, 194,) and continued without change until incorporated in the same words in section 2505 of the Revised Statutes. Under this provision, which thus appears to have been in force for nearly a quarter of a century, it seems to me impossible to hold that the articles in question were not, prior to the act of 1870, clearly entitled to

free entry under the clause "all other collections of antiquities." The designation and description of the articles in question by this phrase is perfect. There is nothing that I find in the prior acts which would indicate any contrary interpretation, and the restricted construction now suggested could not possibly have been maintained prior to 1870. It is alleged, and not disputed, that never, until recently, have such collections been attempted to be made dutiable, and that the established practice was to admit them free, even after the act of 1870. The same practice was followed notably in the case of the Castellani collection, first brought over and exhibited at the centennial exposition at Philadelphia, in 1876, and afterwards exhibited at the Metropolitan Museum of Art. The articles are such as are not usually dealt in in commerce, and such as have no fixed or ascertainable commercial value. The provisions of the tariff laws for the appraisement and assessment of duties are of necessity almost impossible to be practically applied to them. They could not by possibility be any important source of revenue, and they are articles which, in other provisions of the tariff law, the government has shown a desire to encourage the importation of, free of duty, in the interests of education and the fine arts.

Such being the law, the practice, and the policy of the government for at least 24 years before the act of 1870, under the provision above quoted from the act of 1846, making free "all other collections of antiquities," some more definite indication of a purpose to make such collections dutiable must be found than is contained in the act of 1870, which is expressly declared to be designed to extend, and not to restrict, the free list before they can be held dutiable. If it be said that this would leave the clause in question in the act of 1870 of no practical effect, it may be replied that this is not the first or only instance of superfluity, or unnecessary reiteration, in the items of the tariff legislation. It is enough that this act does not profess and was not designed to make anything dutiable which was not dutiable before. It is in no degree incompatible with the former provision. Though narrower in its scope and in reality superfluous, it is not repugnant to the former provision, and hence cannot be deemed a repeal of it, contrary to the expressed general design of the act, nor a ground for now placing any new or more restricted construction upon it than that which before properly belonged to it. *Wood* v. *U. S.* 16 Pet. 342, 363; *Davies* v. *Fairburn*, 3 How. (U. S.) 636, 646; *U. S.* v. *Tynen*, 11 Wall. 92. I hold, therefore, that the articles in question were not dutiable, and were entitled to free entry.

In this point of view, the collection not being dutiable, the United States would not be legally defrauded, even though the means which the claimant used to change the *status* of his collection by exporting them to Canada was circuitous, and would have been blamable if the United States would have been legally injured thereby. Under the act of 1874 no forfeiture can be enforced except upon an actual intent to defraud the United States. Hence, unless the acts complained of involved a loss of duties to which the goverment was entitled, there could be no legal injury to the United States, and hence no actual intent to defraud them. The claimant and his agent had from the first protested against the claim that this collection of antiquities was dutiable, and, as I hold that it was not dutiable, a verdict must be directed for the claimant.