P. G. GRIFFIN, Appellant,

v.

A. L. KELLEY, Jr., Trustee in Bankruptcy of the Estate of Clifford H. Brown, Bankrupt, Appellee.

No. 15674.

United States Court of Appeals Fifth Circuit.

Nov. 23, 1955.

H. C. Eberhardt, Valdosta, Ga., John T. Ferguson, Tifton, Ga., Franklin, Eberhardt, Barham & Coleman, Valdosta, Ga., for P. G. Griffin.

R. D. Smith, Robert R. Forrester, Tifton, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

We are asked to reverse as clearly erroneous a judgment of the District Court denying a petition by appellant to review an order of a referee in bankruptcy rejecting a secured claim filed by appellant, on the ground that the claim was based on a mortgage which was fraudu-

lent and void and which was given without consideration, to appellant by Brown, the bankrupt.[1] Appellant claimed to have loaned the bankrupt $5,000.00 in cash about three months before the bankruptcy, taking a thirty day note secured by mortgage, which he foreclosed prior to joining in the involuntary bankruptcy petition.

Finding, upon the objection to the claim filed by the trustee in bankruptcy, that the money was not actually loaned to the bankrupt and that the whole transaction was a fraud and a sham, the referee rejected appellant's claim and the court below adopted those findings, entering judgment denying the petition for review. Appellant prays a reversal of that judgment on the ground that the evidence fails to sustain the finding that the mortgage was "fraudulent, fictitious and without consideration". On this appeal appellant must carry the burden of showing that these findings of fact were clearly erroneous.[2]

The testimony of appellant and the bankrupt were not accepted by the referee. According to that testimony, appellant was approached by Brown who desired to borrow $5,000.00 with which to settle, at a discount, the accounts of certain creditors who were "on his neck". The bankrupt offered to secure the loan by a mortgage on certain merchandise together with store fixtures, a good portion of the security being already under pledge for other indebtednesses. After examining the security, appellant agreed to make the loan and a note payable in thirty days was executed along with the mortgage which latter was promptly recorded.

The money was delivered in cash by appellant to the bankrupt in the office of an attorney who was acting for both parties.[3] Appellant stated that he obtained the cash money by borrowing $2,600.00 from his brother and putting up the remaining $2,400.00 from funds he was keeping at his home. He did not use any portion of $7,000.00 he stated he had in a "secret hiding place", which developed, upon pressure from the referee, to be a locked tool chest at the home of his son in another state. He moved that money to his brother's home a few days after the loan was made. The brother and the son were not produced as witnesses.

When the bankrupt did not respond to his several demands for payment, appellant, on June 26, began foreclosure proceedings which, with the aid of a waiver by the bankrupt of certain time factors, resulted in a sale of the mortgaged property. Promptly thereafter appellant joined in an involuntary petition in bankruptcy against Brown, averring that his claim exceeded the value of the security by $400.00. The claim he filed against the bankrupt after adjudication represented the principal of $5,000.00 plus interest.

The foregoing facts were testified to by appellant and the bankrupt and, if the referee had believed them, would necessarily have resulted in a finding in appellant's favor. But the referee did not believe them. He entered his findings of fact[4] to the effect that appellant did

---

1. Brown will sometimes be referred to herein as the bankrupt, but his adjudication as such followed by three months the giving of the mortgage. The mortgage was given April 22, 1954, the involuntary petition in bankruptcy and Brown's consent to the adjudication were filed July 3rd, and the adjudication followed on July 20th.

2. Rule 52(a) Fed.Rules Civ.Proc. 28 U.S. C.A.; General Orders in Bankruptcy No. 47, 11 U.S.C.A. following section 53; Donald v. Bankers Life Co., 5 Cir., 1939, 107 F.2d 810; In re Di Palo, 2 Cir., 1955,

218 F.2d 816; and see generally 5 Moore's Federal Practice 53.12[6], pp. 2989 et seq.

3. Without dispute the attorney took the money and disbursed it in liquidation, at a discount, of pressing obligations of the bankrupt.

4. The following are excerpts from his findings and conclusions: "The Court had the opportunity of observing Clifford H. Brown, P. G. Griffin and E. Mace Smith, as witnesses, when they testified and observed their manner on the witness stand, and after a careful consideration of their

not have $5,000.00 to lend, that the loan was not bona fide but was a mere fiction, and that the mortgage and all actions in connection with it were part of a conspiracy between appellant and the bankrupt to defraud the creditors of the latter. These findings and conclusions by

evidence, I make the following findings of fact:

"1.

"That P. G. Griffin did not have $5,-000.00 and did not make any loan of $5,-000.00 that was a bona·fide loan.

"2.

"Clifford H. Brown owes around $125,-000.00 and has not paid any creditors anything; suits were being pressed against him and Brown conceived the idea of giving a lien to two of his friends, P. G. Griffin and E. Mace Smith, with the view of saving all of his personal property consisting of his two stocks of goods which only had two prior mortgages for around $3500.00, and to save the fixtures and the motel furnishings and fixtures.

\* \* \* \* \* \* \*

"5.

"I find that Brown, when the Griffin mortgage was foreclosed, requested the sheriff to not close the store but to let him keep the same open, and he acknowledged service for John T. Ferguson, who was his lawyer and who was representing Griffin in the foreclosure, in which he waived the two day notice in order that an order in State Court could be had for the sale of the fixtures and stocks.

"6.

"I find that he asked the sheriff how he was going to advertise the property and said the sheriff told him, one time on a bulletin board and one time on a tree.

"7.

"I find that John T. Ferguson, representing Griffin, filed an involuntary petition against Brown, who was formerly his client, and that he, John T. Ferguson, secured an acknowledgment of service from said Brown and that he, John T. Ferguson, his attorney, prepared the schedules for Brown which were filed with the Clerk.

"8.

"I find that the mortgage that was given by Brown was given to hinder, delay and defraud his creditors, and I further find that there was no valid loan made to the said Brown, as Griffin did not have the money available to lend to said Brown.

\* \* \* \* \* \* \*

"Conclusions.

"From hearing the witnesses testify and considering the reasonableness and

the referee rejecting the appellant's claim were adopted by the District Court, and appellant's petition for review was denied.

█ Both the referee and the court below adverted to certain Georgia statutes respecting proof of fraud which tend to

unreasonableness of their testimony, the Court makes the following conclusions:

"(a) That the bankrupt, Clifford H. Brown, for some time prior to his bankruptcy, was arranging his business affairs so as to protect himself against his creditors to the end that he would be able to settle with them either for a nominal amount or by the execution of fictitious liens for property sold and then acquire it so that he could get· rid of his debts and at the same time continue to operate his said business free from any obligations.

"That P. G. Griffin was a party to this arrangement and conspired with the bankrupt to accomplish the end above mentioned; that Griffin did not have the cash to have furnished Clifford H. Brown with the $500.00 [$5,000.00] in question; that the explanation of Griffin as to where he kept his money and how he acquired it was not such that can be accepted by the Court; he made no deposit of any money in the bank where he had a regular checking account and in which he at no time had more than $500.-00 on deposit, yet he claims to have had hidden in a tool chest in Tallahassee the sum of $7,000.00 which was no part of the $5,000.00 alleged to have been furnished to Brown; this contention was not supported by any corroborating evidence, such as the testimony of his son. It is significant that this transaction did not appear from the books of the bankrupt, although the bankrupt testified that he kept records and that this particular transaction was recorded there. All of these facts, taken with the E. Mace Smith transaction, which is now conceded to be fraud, leads to the only possible conclusion that the P. G. Griffin note and mortgage for $500.00 [$5,000.00] are fictitious and void.

\* \* \* \* \* \* \*

"Judgment.

"It is the judgment of the Court, therefore, that the mortgage given by Clifford H. Brown to P. G. Griffin is without consideration and made for the purpose of hindering, delaying and defrauding the creditors· of Clifford H. Brown, it is, therefore, void."

mitigate the strict requirements of proof at common law where fraud is alleged;[5] and appellee relies upon the broad discretion lodged in the fact-finder by other Georgia statutes.[6] It was proper that these statutory policies should be thus influential.[7]

■ We have read the evidence carefully and are unable to say that these findings are clearly erroneous. No good purpose will be served by enumerating or cataloging the evidence which the referee and the Court below accepted as sufficient to overturn the testimony of the appellant and the bankrupt. The referee had a right to reject their evidence if, after observing the witnesses as they testified, their manner on the stand, their candor or evasiveness, the conflicts and inconsistencies in their testimony, weighed in the balance with the other countervailing facts and circumstances, he found what they said to be highly improbable or inherently unbelievable.[8]

The referee was persuaded to some extent by a transaction between the bankrupt and one Smith the day following the giving of the mortgage to appellant. The bankrupt then executed a note and mortgage in the sum of $5,600.00 which Smith recorded but which he virtually repudiated at the trial as spurious. The referee concluded that the two similar transactions were part of a well-laid scheme of the bankrupt to defraud his creditors. This evidence was properly considered by the referee in reaching his conclusion.[9]

Every trier of the facts forms his conclusions not only from what the witnesses before him say, but their appearance when they say it. The cold printed page does not preserve this important ingredient of proof, and we are relatively unable to appraise its cogency. Except in plain cases it is the duty of a court denied that vantage point to accept the findings of the one who occupied it—in this case, the referee. The court below did accept and approve them, and we are unable to say that they were clearly erroneous. The judgment is, therefore,

Affirmed.

---

5. e.g. Georgia Code Annotated, Title 37, Sec. 76, provides: "Presumption; slight circumstances sometimes sufficient.—Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence." And cf. Holbert v. Allred, 1920, 24 Ga.App. 727, 102 S.E. 192.

6. See e.g. Georgia Code Annotated, Title 38, Sections 107, 1712 and 1803.

7. Cf. Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Palmer v. Hoffman, 318 U.S. 109, 63 S. Ct. 477, 87 L.Ed. 645; Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L.Ed. 2079, and see generally 5 Moore's Federal Practice, pp. 1335 et seq.

8. See notes 4 and 5 supra, and Cf. Carmack v. Commissioner, 5 Cir., 1950, 183 F.2d 1, 2, and also Boyett v. Commissioner, 5 Cir., 1953, 204 F.2d 205, 208, where we held: "Although positive and uncontradicted testimony as to a particular fact will ordinarily be accepted, a court may reject testimony which, as here, is inherently improbable or manifestly unreasonable, even though no contradictory testimony is offered." And cf. Geigy Chemical Corp. v. Allen, 5 Cir., 1955, 224 F.2d 110, 114.

9. "The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is a matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment * * * Cases of fraud present a still more stringent necessity for the application of the same principle; for fraud, being essentially a matter of motive and intention, is often deducible only from a great variety of circumstances, no one of which is absolutely decisive; but all combined together may become almost irresistible as to the true nature and character of the transaction in controversy * * *." See Wood v. United States, 16 Pet. 342, 358–359, 41 U.S. 342, 358–359, 10 L.Ed. 987, and see also to the same effect New York Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 598–599, 6 S.Ct. 877, 29 L. Ed. 997.