COPPERMAN, plaintiff in error, v. PEOPLE.

*Evidence — on trial for receiving stolen goods — prior transactions of similar character — Charge to jury.*

At the trial of an indictment for receiving stolen goods, it had been proved that the goods in question had been stolen by the clerk of the owner -from whom the prisoner received them, and that on several previous occasions the clerk had stolen goods of the same kind from the same owner, which he had sold or pawned to prisoner. *Held,* that conversations had between the prisoner and the clerk at the time of the previous transactions were admissible on the part of the prosecution to show guilty knowledge.

The prisoner was a licensed pawnbroker, and had paid the clerk only $6 for the goods, which were shown to be worth $17.50. The clerk testified that he sold the goods; the prisoner claimed and testified that the money was advanced as a loan upon the pledge of the goods. *Held,* that a charge to the jury that it was material for them to consider whether the indicted act was a pawn or a sale was not error.

ERROR to the general sessions of the peace of the city and county of New York, to review the conviction of Hyman Copperman. The opinion states the necessary facts.

*A. Oakey Hall,* for plaintiff in error.

*B. K. Phelps,* district attorney, for the people.

DAVIS, P. J. The plaintiff in error was indicted for, and has been tried and convicted of the offense of receiving stolen goods, knowing the same to have been stolen.

The offense charged in the indictment is alleged to have been committed on the 30th of June, 1871, in receiving two parcels of silk, of one pound each, the property of certain persons named (who composed the firm of R. Gardner & Co.), stolen from them by one James Robinson. Robinson was the principal witness on the part of the people. He was, at the time of the alleged offense, and for some years before, a clerk in the wholesale establishment of R. Gardner & Co. The theft of the silk by Robinson was both proved and admitted. He testified that, on the 30th of June, 1871, he took the silk from the store of his employers and carried it to the plaintiff's shop and sold it to him for $6. The value of the silk was shown to be $17.50.

Robinson also testified that he had on ten or twelve occasions within a year before the transaction charged in the indictment, taken from his employers, goods of the same or similar kinds, and pawned or sold them to the plaintiff. That, on the first two occasions, he pawned the goods, taking tickets for the same, which he afterward sold to plaintiff; and, on all the other occasions, he sold the goods to him for sums much less than their real value.

The plaintiff in error was a licensed pawnbroker, and it was claimed and testified to in substance by him (and other testimony was given tending to establish) that he had received the goods in pawn in the course of his business, loaning upon them the sums stated by Robinson to have been paid.

But three questions are made on the part of the plaintiff in error: 1st. That the court erred in admitting conversations which related to such transactions as were had at a time prior to the one embraced in the indictment. 2d. That the court erred in charging the jury that it was material for them to consider whether the indicted act was a pawn or sale. 3d. That the judge erred in not directing an acquittal upon the evidence. No point is made upon any informality in the record.

To constitute the crime, two facts were necessary to be established. First, that the goods had been stolen. Second, that the receiver knew at the time of receiving them that they had been stolen. The first of these facts was conceded, and it was also clearly shown and not disputed that the plaintiff in error received the goods from the person who had stolen them. The character of the act of receiving them, and whether that act was accompanied

with the guilty knowledge required by the statute, were the controverted facts of the trial.

It was sought on the part of the people to show, as tending to prove the guilty knowledge that, before the particular act charged, there had been a series of similar transactions between the same persons, in which the plaintiff in error had received from Robinson goods similar to those described in the indictment, and which the latter had stolen from Gardner & Co. The *fact* of the transactions was not objected to; but the conversations had between the accused and Robinson at the time of such transactions were objected to and admitted under exception.

We think the court committed no error in admitting such conversations. The competency of such evidence was affirmed in *Regina* v. *Dunn*, 1 Moody's C. C. 146 ; and we are aware of no case which conflicts with that decision. The evidence offered and received in this case did not go outside of transactions between the accused and Robinson. It related to goods stolen by him and directly delivered to the accused. The goods were similar in kind and were received in each case under like circumstances. The transactions were some ten or twelve in number, and, if Robinson were believed, they were, except the first two, sales at prices much below their actual value. Robinson was a clerk in a store, engaged in stealing from his employers from time to time and carrying the stolen goods to the plaintiff's shop. Now, while the precise point of inquiry for the jury was whether the plaintiff knew, when he took the packages in question, that Robinson had stolen them, yet the mode of proving such knowledge was not restricted to what transpired at the time of the very act charged in the indictment. It would clearly have been competent to have proved that before receiving the silk in question the plaintiff in error had stated that he knew Robinson was stealing goods from his employers and bringing them to him, and from such an admission a jury might find that he knew the silk received on the last occasion had also been stolen. So it was competent, in connection with the transactions themselves, to show conversations between the parties which tend to establish knowledge of their real character, and it is for a jury to say whether they go far enough to show that the receiver knew the nature of Robinson's acts, both in those and in the last transaction. It is for the jury to judge whether the previous conversations show an understanding with the thief or a knowledge of his crime, and conversa-

tions having a tendency to show either of those things are properly admissible, especially when accompanied with acts of dealing which they tend to characterize. The idea that each conversation, in order to be competent, must "prove that the thief communicated his crime or that the receiver admitted his knowledge of the crime," cannot be sound, because such a rule would take from a jury its peculiar province of determining the meaning of the language used by the parties, their intention in using it and the inferences justly to be drawn from it. It is enough that the conversation tends to prove, under any fair construction a jury may give to it, the guilty knowledge necessary to be found.

This, we think, is the rule deducible from all the authorities. 2 Russ. on Crimes, 776 (3d ed.); 3 Greenl. Ev., § 15; *Wood* v. *United States*, 16 Peters, 360; Roscoe's Crim. Ev. 876; *Commonwealth* v. *Jenkins*, 76 Mass. 485; *Regina* v. *Foster*, 29 Eng. L. & Eq. 548. And we think there was no departure from this rule on the trial.

The objection to the charge is not well founded. It became quite material for the jury to determine whether the transaction charged in the indictment was a sale or a pawn to secure a loan. Robinson testified that it was a sale. The plaintiff in error that it was a pawn. The price paid, if a sale, being much less than value, was a circumstance to be considered by the jury; but, if a pawn to secure a loan, the amount loaned was not material as bearing on the question of notice. Besides, the court charged, in substance, that, if Robinson had testified falsely in any material point, he was to be disbelieved in all respects, and it was with reference to the conflict between him and the plaintiff's evidence as to the character of the transactions, that the charge called the special attention of the jury to that subject, and, in that regard, it was very favorable to the plaintiff in error.

In respect to the third point it need only be said that there was a conflict of evidence quite too great to have justified a direction of acquittal. The court submitted every question with entire fairness to the jury, and the case was one peculiarly within their province. If the case could be disposed of on the merits, the judgment should be affirmed; but for reasons assigned in the opinion of DANIELS, J., in *Hildebrand* v. *People, ante,* page 82, the proper course is to dismiss the writ.

*Writ dismissed.*