### J. D. BROWN v. JOHN M. BAYER.[1]

December 18, 1903.

Nos. 13,756—(112).

**Fraud.**

In cases where the existence of fraud depends upon a variety of circumstances arising from motive and intent and inferences from circumstantial evidence, the court should submit that question to the jury with proper instructions concerning the tests of fraud.

**Evidence.**

Evidence considered, and *held* that the claim of ownership to property seized on attachment at the suit of a creditor was not so conclusively established against the facts and circumstances indicating that such asserted ownership was colorable and fraudulent as to justify the court in taking that issue from the jury, to whom it should have been submitted.

Action in the district court for Clay county to recover $2,000 and interest for the conversion of certain cattle and swine. The case was tried before Baxter, J., and a jury which rendered a verdict in favor of plaintiff. From an order denying a motion for a new trial, defendant appealed. Reversed.

*James M. Witherow,* for appellant.

*F. H. Peterson,* for respondent.

LOVELY, J.[2]

Claim and delivery to recover a carload of live stock seized by the sheriff on attachment issued in an action against one H. H. Baker. The property was claimed by the plaintiff upon his asserted right of ownership. It was sold by defendant sheriff as the property of the debtor. At the close of the evidence the trial court, upon the view that the evidence conclusively established the plaintiff's title, instructed the jury that the only question for their determination was the value of the property for which plaintiff would be entitled to a verdict. The charge was excepted to generally, which necessarily presents the question whether the conclusion of the court that the title to the property in plain-

[1] Reported in 97 N. W. 736.
[2] START, C. J., absent, sick, took no part.

tiff had been conclusively established. There was a motion for a new trial, which was denied. From this order defendant appeals.

The controverted question at the trial was the good faith of certain transactions whereby Baker acted in the ostensible capacity of agent for plaintiff in the purchase, shipment, and sale of the stock, which was disputed, it being claimed by the defendant for the judgment creditor that the asserted title of plaintiff was colorable, and to aid Baker, an insolvent debtor, by fraudulently protecting his property from subjection to other liabilities than that of such debtor, and to prefer the First National Bank of Hope, of which plaintiff was cashier. There was evidence tending to support plaintiff's claim that shortly before the seizure of the car of stock there was a conversation between plaintiff and Baker to the effect that the latter was to buy cattle; that he would pick up the stock for plaintiff, who was to furnish the means. Baker was to attend to the loading and shipment of the same to market, and the profit was to be applied to reduce an existing indebtedness of Baker to the Bank of Hope. Baker, in his examination at the trial, stated that he was acting in furtherance of this agreement as the agent of plaintiff, and, whether this statement be treated as a legal conclusion or not, we shall assume that an agreement for that purpose might have been entered into, and that a letter of credit was furnished Baker by plaintiff to pay for cattle, and that the profits therefrom were to be used to liquidate an indebtedness in which to some extent the plaintiff was interested, whereby a preference was thus created against the claim of other creditors of the debtor. It was also shown that Baker was insolvent, and that his insolvency was known to the plaintiff.

The live stock shipped was purchased by Baker in his own name, and it was put into the car, billed to market in the name of plaintiff, for sale by Baker, who had manual charge and control of it en route, which made the question of the right of possession open and for the jury. The means by which the money was furnished Baker to pay for the cattle through the Bank of Hope was a letter of credit furnished by plaintiff as cashier, and directed to the Scandia American Bank of Crookston, where Baker picked up the cattle, and put them in the car for shipment. There were some changes made in the books of the Bank of Hope with reference to the means thus furnished, which required explanations to relieve the plaintiff of the suspicion that the

money was not furnished by the bank instead of himself. The explanations might have been accepted by the jury, but they were not allowed to pass thereon, and, taking into consideration the fact that Baker was in manual possession of the property, the insolvency of the debtor, the possible benefit of protecting the property from subjection to his debts, the purpose in the transaction of giving a preference to a particular creditor, plaintiff's ownership was not so conclusively established that the court was authorized to determine absolutely that the verbal agreement upon which plaintiff relied was made and carried out in good faith.

In cases where the existence of fraud depends upon a variety of circumstances arising from motive, intent, and inference from circumstantial evidence, the court should submit the question to the jury, with proper instructions concerning the tests of fraud. Flack v. Neill, 22 Tex. 253; Bigelow, Fraud, 469. The litigated question as to the asserted fraud of plaintiff in aiding Baker to defeat the attachment creditor should have been submitted to the jury, instead of decided by the court. It was a clean-cut question of fact for the constitutional tribunal—"a jury of twelve men"—to decide, and the denial of this right to the defendant by the court was erroneous.

We have not, in view of the criticism that has been made to numerous assignments in the admission of testimony, felt at liberty to consider them, and it is unnecessary to do so in view of the disposition we are required to make of this appeal.

Order reversed, and new trial granted.