STATE v. LYTLE.

(Filed May 26, 1905.)

*Intoxicating Liquors—Unlawful Sale—Former Conviction —Police Court—Jurisdiction—Trial by Jury—Petty Misdemeanors—Indictment by Grand Jury.*

1. Where a tax or license for retailing liquor is required by the State, and another tax or license by the town, selling the same glass of liquor may be a violation of the State law and of the town ordinance, if license has not been obtained from both, and on indictment by the State, a plea of former conviction in the police court for retailing in violation of the town ordinance is invalid.

2. An act of the Legislature, giving a police court concurrent original jurisdiction of offenses cognizable by justices of the peace, is valid.

3. The Act of 1905 creating a police court for the City of Asheville, and providing that it shall, in addition to jurisdiction of offenses cognizable by justices of the peace, "have exclusive original jurisdiction of all other criminal offenses committed within the corporate limits of said city, below the grade of felony as now defined by law, and all such offenses committed within said city are hereby declared to be petty misdemeanors," and giving a right of appeal to the Superior Court in all cases, is constitutional.

4. The Constitutional guaranty of a jury trial is met by the right of appeal which is given from the police court, in all cases, to the Superior Court.

5. The provision in the act creating the police court for the City of Asheville "that all offenses less than felony, as now defined by law, committed within the said city, are hereby declared to be petty misdemeanors," is valid, the Constitution not having defined "petty misdemeanors" it was competent for the Legislature to define the offenses which should be so classified, provided the punishment therein is not that of felonies.

6. Under Article I, section 13, of the Constitution, indictment by grand jury is dispensed with in the trial of petty misdemeanors.

7. The act creating the police court for the City of Asheville is not unconstitutional in that it declares certain offenses "petty misdemeanors" in that city, and triable without a finding by a grand jury, while it is not so enacted elsewhere.

8.   The Superior Court has no original jurisdiction of the offense of
        retailing spirituous liquor in the City of Asheville without
        license.

INDICTMENT against Mark Lytle, heard by *Judge Walter H. Neal* and a jury, at the April Term, 1905, of the Superior Court of BUNCOMBE County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* and *M. W. Brown* for the State.
*Frank Carter* for the defendant.

CLARK, C. J. By chapter 35, (Pr.) Laws 1905, there was created a special court in Asheville to be styled the "Police Court," to be presided over by a police justice, providing for his election, term of office, qualification and compensation. Section 4 of said act confers upon said court "all the jurisdiction and powers in all criminal offenses occurring within the corporate limits of the City of Asheville, which are now or may hereafter be given justices of the peace," and also "exclusive original jurisdiction to hear and determine all offenses and misdemeanors consisting of a violation of an ordinance of said city." Section 5 provides that "said police court shall, in addition to the jurisdiction conferred by section 4 of this act, have exclusive original jurisdiction of all other criminal offenses committed within the corporate limits of said city, below the grade of felony as now defined by law, and all such offenses committed within said city are hereby declared to be petty misdemeanors." By section 13 the right of appeal to the Superior Court of Buncombe County is given in all cases.

The defendant who was indicted in the Superior Court for retailing spirituous liquor without license, contrary to the general law of this State, pleaded former conviction and relied upon the record of his trial, conviction and sentence in

the police court for retailing spirituous liquor in violation of the town ordinance. It does not appear that it was the same sale, but, even if it were, the plea of former conviction was invalid, as was held in *State v. Stevens,* 114 N. C., 878, where it is pointed out that while a town ordinance cannot make punishable an offense made punishable by the State law, yet when a tax or license is required by the State, and another tax or license is exacted by the town, selling the same glass of liquor may be a violation of the town ordinance and also a violation of the State law, if license has not been obtained from both; and, further, the same act may be punishable by the Federal Government if in violation of its statutes, and indeed if the purchaser is a minor the same single act may constitute a fourth distinct offense of selling spirituous liquor to a minor, and even a fifth if the sale is on Sunday. Though there is a single act, it may be thus a violation of five statutes, and when in such case "each statute requires proof of an additional fact, which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution under the other." *Burwell, J.,* in *State v. Stevens, supra,* at p. 877, citing *Arrington v. Commonwealth,* 87 Va., 96; *Ruble v. State,* 51 Ark., 170; Black Intox. Liq., sec. 555. The ruling in *Stale v. Stevens* has been cited and followed in *State v. Reid,* 115 N. C., 741; *State v. Robinson,* 116 N. C., 1048 (which was the case of an assault with a deadly weapon and also carrying a concealed weapon); *State v. Downs, Ibid.,* 1067; *State v. Lawson,* 123 N. C., 742; *Stale v. Smith,* 126 N. C., 1059.

The defendant further moved to quash the indictment and also in arrest of judgment upon the ground that by virtue of the above recited Act of 1905, the Superior Court had no original jurisdiction. This presents the real point in the case, which is the constitutionality of section 5 of the act. There can be no question as to the validity of so much of section 4 as gives the police court concurrent original jurisdiction of

offenses cognizable by justices of the peace, for the Constitution does not make the jurisdiction of the latter exclusive. *Rhyne v. Lipscombe*, 122 N. C., at p. 656. Counsel asked us to pass upon the constitutionality of the other clause of section 4, which purports to give to the police court "exclusive original jurisdiction to hear and determine all offenses and misdemeanors consisting of a violation of an ordinance of said city." But that point is not presented by this record, and we would not presume to pass upon the constitutionality of an act of the General Assembly upon an *obiter dictum*. It is too serious a matter to be considered unless absolutely necessary to the decision of a cause, and a statute will then never be held unconstitutional if there is any reasonable doubt. *Sutton v. Phillips*, 116 N. C., 504.

The Constitution, Article IV., section 14, authorized the General Assembly to establish "Special Courts for the trial of misdemeanors in cities and towns." By virtue of this provision such courts were formerly established in Wilmington and New Bern. By the constitutional amendments of 1875, Article IV., sections 2 and 12, the General Assembly was authorized to establish "such other courts inferior to the Supreme Court," and "allot and distribute" the jurisdiction of the courts below the Supreme Court as it saw fit. Under this, criminal courts and circuits were established, until finally these courts were, by statute, given the same jurisdiction, civil and criminal, as the Superior Courts, with the right of appeal therefrom direct to this court. In *Rhyne v. Lipscombe*, 122 N. C., 650, and *Tate v. Commissioners, Ibid.*, 661, these acts were held unconstitutional so far as they provided for appeals direct from such courts to this court, and took away the appeal, given by the Constitution, direct from justices of the peace, to the Superior Court. Subject to these restrictions, and the further restriction that such courts might be given only concurrent but not exclusive jurisdiction, of matters given to justices of the peace by the Constitution, it'

was held that the General Assembly might "create courts inferior to the Supreme Court with all, or such part as it thinks proper, of the original criminal or original civil jurisdiction above that given by the Constitution to justices of the peace."

The objection to section 5 is therefore founded upon the Constitution, Article I., section 12: "No person shall be put to answer any criminal charge, *except as hereinafter allowed*, by indictment, presentment or impeachment;" and section 13: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. The Legislature may, however, provide other means of trial for *petty misdemeanors*, with the right of appeal." In the police court there is no jury nor grand jury.

The guarantee of a jury trial is fully met by the right of appeal which is given from this police court, in all cases, to the Superior Court, but the objection is urged that there is no provision for a grand jury. The General Assembly might have provided for this also by enacting that upon appeal the action should be quashed unless an indictment is found. It sought, however, to attain the same end by providing that "all offenses less than felony, as now defined by law, committed within said city are hereby declared to be petty misdemeanors."

Laws 1876, chapter 154 (Code 1883, ch. 21), established a general system of Inferior Courts and gave them jurisdiction (Code, sec. 808), "of all crimes and misdemeanors except those whereof exclusive jurisdiction is given to courts of justices of the peace and except the crimes of murder," etc., and section 11 of said act (Code, sec. 810), provided that "in all issues of fact founded upon trials of *petty misdemeanors* the parties may * * * waive their right to have the same determined by a jury." As these courts had no jurisdiction, either original or appellate, of any offense within the jurisdiction of a justice of the peace, it is clear that "petty misde-

meanors" was not a term restricted to offenses cognizable by a justice of the peace.

When the Constitution of 1868 was created, there was no distinct classification known as "petty misdemeanors." At that time "misdemeanor" was a broader term than now, and embraced many crimes that were infamous and done in secrecy and malice or with deceit and intent to defraud, which formerly were punishable corporally, and after 1868 by imprisonment in the State's prison. Among these, as enumerated in Revised Code, chapter 34, were accessories to felony (section 54) ; certain grades of arson (section 30) ; bribery of jurors (section 34) ; mismarking cattle, larceny (section 57) ; concealing birth of child (section 28) ; false pretense (section 67) ; forgeries (section 64, 65 and 66) ; certain larcenies (section 31 and 32) ; receiving stolen goods (section 56), and perjury (section 49). By Revised Code, chapter 34, section 120, misdemeanors were to be punished as at common law, "but the punishment of the pillory shall be used only for crimes that are infamous, or done in secrecy and malice, or done with deceit and intent to defraud."

Thus, misdemeanors were practically divided into two classes: (1) Those which, by reason of their heinous nature, might be punished corporally; and (2) Those that could not be so punished. The first class, those that could be punished corporally, were not petty. The others, it would not be unreasonable to term petty. The Act of 1891, chapter 205, by defining felony, as all offenses "punishable by death or imprisonment in the State's prison," transferred all of the first class, the misdemeanors formerly punishable corporally, into the class of felonies. It was competent for the Legislature to do this and make those crimes felonies. It was equally competent for it, in the act before us to syle the misdemeanors in the second class above as "petty misdemeanors." The punishment to be inflicted for any crime is left entirely to the General Assembly, which can in its discretion affix lesser punish-

ments, even for the four crimes now visited with capital punishment. Const., Art. XI., sec. 2. As it can fix the punishment and can change at will the dividing line between felonies and misdemeanors, there is no constitutional inhibition upon its defining any class of lesser crimes as petty misdemeanors.

The object of the statute, creating the police court, is to relieve the Superior Courts of petty business, to relieve the tax-payers, and defendants also, of heavy costs, and to give a speedy trial, lightening jail expenses and dispensing often with long imprisonment on detention till a term of court comes around with its jury and judge. There is no harm done, since an appeal always lies open to a convicted defendant to the Superior Court where he has the right of trial by jury; whereas to the acquitted defendant or to one who takes no exception to his punishment, there is a relief from unnecessary delay and costs as well as diminution of court expenses to the public. Indictment by Grand Jury is still required for other than "petty misdemeanors."

The Constitution not having defined "petty misdemeanors" and there being no well settled line of demarcation when that instrument was adopted, it was competent for the General Assembly to define and mark the offenses which should be so classified. We see no force in the argument that another Legislature may denominate all felonies as "petty misdemeanors," and thus even murderers may be tried without the intervention of a grand jury. Certainly the General Assembly can reduce the punishment of any and all offenses and leave no offense above the grade of petty misdemeanors, but the punishment must not be that of felony, for the punishment controls the definition. *State v. Fesperman,* 108 N. C., 880. The judicial department assumes no supervision of the Legislature. The law making body represents the people, and unless an enactment is clearly in contravention of the organic law—the Constitution—the correction of any measure passed by the Legislature must be left to another Legislature. The

courts have no such power.     We cannot assume that the Leg-
islature would attempt to evade the Constitution.     Lastly, it
is suggested that the act is invalid in that it declares these of-
fenses petty misdemeanors in Asheville, and triable without a
finding by a grand jury, while it has not so enacted else-
where.     It is not necessary that because there is a police jus-
tice trying petty misdemeanors without a grand jury in Ashe-
ville there must be the same procedure everywhere throughout
the State.     In *State v. Mallett,* 125 N. C., 718, this court
held that the Legislature could authorize appeals by the State
to this court from judgments in the Superior Court upon ap-
peals thereto from the Eastern District Criminal Court,
though appeals by the State were not allowed from judgments
in the Superior Court upon appeals thereto from the Western
District Criminal Court.     Upon writ of error to the United
States Supreme Court, this ruling was affirmed, 181 U. S.,
589 (reprinted, 128 N. C., 619), the court saying on pp. 628,
629 : "Each State prescribes its own mode of judicial proceed-
ing.     If diversities of laws and judicial proceedings may ex-
ist in the several States without violating the equality clause
in the Fourteenth Amendment, there is no solid reason why
there may not be such diversities in different parts of the same
State.     A uniformity which is not essential as regards differ-
ent States cannot be essential as regards different parts of the
same State."

    The State Constitution contemplated a diversity of proced-
ure in this particular, when it provided in Article IV., sec-
tion 14, that "the General Assembly shall provide for the es-
tablishment of special courts for the trial of misdemeanors in
cities and towns where the same may be necessary."     Sections
12 and 13, of Article I., are to be construed together.     *State v.
Crook,* 91 N. C., 540.     When Article IV., section 27, dis-
pensed with indictment by a grand jury, required by Article
I., section 12, "except as hereinafter allowed" in the trial
of cases before justice of the peace, and when Article I, sec-

tion 13, also dispensed with it, "in the trial of petty misdemeanors" without defining what such misdemeanors were, it left the classification to the General Assembly. Should the General Assembly classify as a "petty misdemeanor" a crime whose punishment is clearly not of that class of offenses, it would be unconstitutional. But this was not done in this act. The Superior Court has no original jurisdiction of this offense, and the motion to quash and in arrest of judgment should have been sustained.

Reversed.