MAMIE W. BARKER v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY AND SOUTH ATLANTIC LIFE INSURANCE COMPANY.

(Filed 1 October, 1913.)

1. Insurance—Suicide—Declarations—Res Gestæ—Evidence.

   In an action on a life insurance policy, the unfulfilled declarations of the deceased of an intention to get a pistol for lawful purposes, made two weeks and also ten months before his death, are incompetent to rebut suicide, it appearing that the deceased was found early one morning dead from a pistol in his hand; the declaration having been made too remote in point of time to be a part of the *res gestæ,* and also being statements made in his own interest.

2. Same—Appeal and Error.

   A new trial will not be granted for erroneous admission of evidence or other errors unless it appears that the appellant has been prejudiced, but in this case it is held that the admission of unfulfilled declarations of the deceased to buy a pistol for lawful purposes, which were erroneously admitted, was reversible error in an action on a life insurance policy which was defended on the ground of suicide.

APPEAL by defendant from *O. H. Allen, J.,* at June Term, 1913, of CARTERET.

*A. D. Ward and T. D. Warren for plaintiff.*
*Guion & Guion for defendants.*

CLARK, C. J. This is an action by the widow of Joseph C. Barker on two policies issued by the defendants separately, upon the life of her husband, in which she was named as beneficiary. The actions were brought separately, but by consent they were consolidated and tried as one, the same questions being presented. Indeed, the only matter at issue is the defense that the insured committed suicide.

The plaintiff was allowed to testify that some eight or ten months before her husband's death he stated to her that he needed a pistol as deputy sheriff, and was thinking of getting one, and she also gave a conversation on another occasion, later, between herself and husband, as to the need of a pistol to protect herself in his absence. The object of this testimony was of course to rebut the theory of suicide based upon the purchase of the pistol by him on the evening, or afternoon, of 7 March, 1911, the evidence being uncontradicted that the insured was killed by that pistol, in his own hands, 6:30 the next morning. The controversy is as to whether such killing was intentional or accidental.

The conversations testified to by the wife as having occurred "eight to ten months previously" and at the other time were incompetent as hearsay. They could not possibly be a part of the *res gestæ.* The times were too remote for that purpose. Such conversations were not merely irrelevant, but were calculated to prejudice the defense. That the assured had, or had not, an intention to buy a pistol for a legitimate purpose eight or ten months previously and on the other occasion referred to, two weeks before the death, could throw no possible light upon the question whether he had an intention to kill himself at the time he bought the pistol. Nor could hearsay evidence of his declarations to his wife in his own favor on those occasions be

admissible. Declarations against the party's interests are competent, but not self-serving statements, except in corroboration of competent statements.

Suppose the assured had not succeeded in the act, and had been indicted therefor, could these declarations have been admitted in his favor? On the other hand, suppose he had been indicted for murder committed with that pistol—the killing of some one else than himself—could these declarations made to his wife weeks and months previously of his disposition to buy a pistol for the legitimate purpose, which purpose was not then executed, be admitted to rebut the presumption arising from the killing with a deadly weapon? Suppose, indeed, on such indictment for homicide the same question had arisen as here, whether the shooting was intentional or accidental, would such previous statement by him of an unexecuted intention be competent in his defense? We think not. It follows, therefore, that they were incompetent when the question is whether the killing of himself was accidental or intentional.

We are not disposed to grant a new trial for error in the admission or rejection of testimony unless we can see that it was prejudicial, but we think that the admission of this testimony must have been injurious to the defendants. It was introduced for that purpose. There must be a

New trial.