## SHAW COTTON MILLS v. ACME HOSIERY MILLS.

### (Filed 2 March, 1921.)

**1. Appeal and Error—Harmless Error—Evidence—Contracts—Trials.**

Mere error in the trial of a cause will not be considered as reversible error unless made to appear to have been material and prejudicial to appellant's right; and where damages are sought as a counterclaim to plaintiff's action on contract, involving the plaintiff's failure to ship a specified amount of cotton yarns at a certain price, the damages claimed by defendant being those occasioned by a rising market, it is harmless error for the court to admit evidence of defendant that it had bought from another mill yarns at a certain higher price, when in corroboration of other testimony that it was necessary to pay this price to supply the deficiency, caused by plaintiff's breach.

**2. Same—Instructions.**

Where the damages sought for the breach of plaintiff's contract, by counterclaim, are the difference between the contract price and the market value of cotton yarns at the time of the alleged breach, and the court has properly charged the jury accordingly, and there is evidence that the price of the yarns has continued to advance, it is harmless error to admit on the trial, in corroboration, the price of the yarns at that time.

**3. Contracts—Breach—Evidence—Declarations.**

Where the defendant has rejected certain yarns shipped by plaintiff as not coming up to contract, statements in plaintiff's letters to defendant that these yarns had been shipped to others without objection, as tending to show that defendant should have accepted them, are self-serving and properly excluded as evidence in plaintiff's favor; especially when it appears that the plaintiff accepted the returned shipments without objection.

**4. Contracts—Breach—Evidence—Substantial Compliance—Trials—Questions for Jury.**

The plaintiff contracted to deliver to the defendant "approximately 1,000 pounds" of yarn a month, for a certain year at a stipulated price: *Held,* a subsequent correspondence between the parties showing that plaintiff understood the contract as calling for sufficient yarns for that year to meet defendant's requirements, approximating 12,000 pounds, is sufficient upon which to submit to the jury the issue, "Did the plaintiff contract to deliver to defendant 12,000 pounds of cotton yarns?" etc., there being evidence that the plaintiff only shipped 11,244 pounds, and the defendant had to buy the deficiency on a rising market.

APPEAL by plaintiff from *Devin, J.,* at June Term, 1920, of HALIFAX.

Civil action, brought by plaintiff to recover the sum of $286.94 for certain yarns sold and delivered to the defendant during the years 1915 and 1919. Defendant admitted receipt and nonpayment of said goods, but set up in defense, and by way of counterclaim, two causes of action, each for an alleged breach of contract, as follows:

3—181

COTTON MILLS *v.* HOSIERY MILLS.

1. That during the month of October, 1914, the plaintiff contracted and agreed to sell the defendant sufficient splicing yarn to supply its needs for the year 1915, estimated at 12,000 pounds, at 24 cents per pound; that of said amount plaintiff delivered 11,244 pounds only, leaving 756 pounds due and unfilled on said contract.

2. That during the month of April, 1919, plaintiff contracted and agreed to sell the defendant 15,000 pounds of splicing yarn at 65 cents per pound, for delivery within six months; that of said amount plaintiff only shipped 8,627 pounds, a portion of which was returned and accepted by plaintiff, leaving 8,262 pounds of yarn due and unfilled on said contract.

Upon issues joined the following verdict was rendered by the jury:

"1. Is the defendant indebted to the plaintiff, and if so, in what amount? Answer: '$286.94, with interest from 10 August, 1919.'

"2. Did the plaintiff contract to deliver to defendant 12,000 pounds of splicing yarn during the year 1915, as alleged in answer? Answer: 'Yes.'

3. "If so, did the plaintiff fail to comply with said contract? Answer: 'Yes.'

"4. What damage is the defendant entitled to recover therefor? Answer: '$74.60.'

"5. Did the plaintiff contract to deliver to the defendant 15,000 pounds of splicing yarn in 1919, as alleged in the answer? Answer: 'Yes.'

"6. Did the plaintiff wrongfully fail to comply with said contract? Answer: 'Yes.'

"7. What damage, if any, is the defendant entitled to recover therefor? Answer: '$1,684.80.'"

Judgment on the verdict in favor of the defendant for the sum of $1,427.86. Plaintiff excepted and appealed.

*Travis & Travis, W. L. Knight, R. C. Dunn, and Daniel & Daniel for plaintiff.*

*George C. Green, H. M. Robins, and J. A. Spence for defendant.*

STACY, J. There are 49 exceptions in the record, 35 of which relate to the admission and exclusion of evidence, one to the submission of the second issue to the jury, two to the court's refusal to give special prayers for instruction, seven to his Honor's charge, and the remaining four to the formal rendition of judgment.

Several exceptions, directed to the court's ruling upon questions of evidence, merit our attention and consideration.

The defendant was permitted to offer in evidence, over the plaintiff's objection, an invoice of yarn bought by the defendant from the Magnolia Mills at Charlotte, N. C., 25 October, 1919, showing the price paid

at that time to be $1.05. This, standing alone, would be objectionable, but the witness had previously testified that he had paid $1.05 for yarn to supply the deficiency of plaintiff's shipments. The evidence was offered in corroboration. Viewing it in this light, even if inadmissible, we think its effect was harmless. Mere error in the trial of a cause is not sufficient grounds for a new trial. It should be made to appear that the ruling was material and prejudicial to appellant's rights. *S. v. Smith,* 164 N. C., 476; *Schas v. Assurance Society,* 170 N. C., 420; and *Brewer v. Ring and Valk,* 177 N. C., 476.

Again, defendant was permitted to show, over plaintiff's objection, the price of yarn at the time of trial. His Honor restricted this to corroborating evidence—testimony having been offered that the price of yarn had continued to rise, from time to time, since the execution of the contract. Furthermore, upon the measure of damages the court instructed the jury that they should limit their award to the difference between the agreed price and the market price at the time of the breach of the contract. This apparently was sufficient to cure any objection.

A mass of correspondence between the parties was offered in evidence, and his Honor instructed the jury not to consider statements contained in the letters of the plaintiff to the effect that the rejected yarn and other yarn had been shipped to different customers and that no complaint had been made by them. Plaintiff contends this was evidence going to show the yarn to be of the character called for in the contract. These declarations, at most, were self-serving and tended only to prove a negative. Hence, their exclusion could not be held for reversible error. But this position was not insisted on at the time. Plaintiff accepted the yarn as shipped back, without objection, and credited the same on the defendant's account.

We have carefully examined the remaining exceptions, touching questions of evidence, and find them to be untenable.

The plaintiff objected to the submission of the second issue to the jury, and contended that the court should have held as a matter of law that the shipment of 11,244 pounds of yarn during the year 1915 was a substantial compliance with its contract. The original correspondence relative to defendant's requirements, which the plaintiff agreed to fill, used the words: "approximately 1,000 pounds monthly for the year 1915." But at a subsequent date, replying to an inquiry from the plaintiff as to the amount, the defendant stated: "We understood we were to have 1,000 pounds of yarn per month for a term of 12 months. Please acknowledge receipt of this letter and state when we may expect the first shipment to start out." Plaintiff answered on 17 September, 1915, as follows: "Replying to your favor of the 15th, we will begin shipping again next week." Later, on 21 December, 1915, plaintiff wrote the defendant: "Some time

in September you raised the question about our delivering the balance of your order, and in order to satisfy you that we would live up to our end of the agreement we shipped you faster than the contract required, and as the order was not for 12,000 pounds, but for your requirements during the year 1915, approximately 1,000 pounds monthly, and under this contract if for the conduct of your business you had required 13,000 pounds we would have furnished same, but as 11,244 pounds, as per your statement, has met your requirements, we are relieved from further shipments under this contract."

Under this correspondence, we think his Honor properly submitted the second issue to the jury, and that the answer was justified by the evidence.

No material benefit would be derived from considering all the exceptions and assignments of error in detail. A perusal of the charge given by the learned judge who presided at the trial of this cause shows that the case was tried with care and with due regard for the rights of the parties. There was no error in his refusal to give the plaintiff's first prayer for instruction—the second seems to have been given—and we do not think the exceptions to the charge as given can be sustained.

Upon the whole record, after a careful and painstaking investigation, we find no material or prejudicial error. The controversy was largely one of fact, tried before a jury of plaintiff's own county, and agreeable to its selection. We have found no sufficient reason for disturbing the verdict and judgment.

No error.