STATE v. M. L. BEAM.

(Filed 6 December, 1922.)

1. **Intoxicating Liquors — Spirituous Liquors — Possession—Evidence— Questions for Jury—Criminal Law.**

   *Held*, the evidence in this case was sufficient to sustain a conviction of the defendant for having in his possession spirituous liquors for the purpose of sale, and of receiving more than one quart thereof within fifteen days time.

2. **Intoxicating Liquors — Spirituous Liquors—Evidence—Declarations— Hearsay Evidence.**

   Upon the trial of defendant for having spirituous liquor in his possession for the purpose of sale, the defendant may not show, on cross-examination of the officer who had made the arrest, what the son of the defendant had said as to the ownership of the whiskey, at that time, it being objectionable as a mere declaration of a third party, and hearsay.

3. **Intoxicating Liquors — Spirituous Liquors—Evidence—Instructions— Harmless Error.**

   Where there is evidence tending to show that the defendant's son was the real culprit, though the defendant was on trial for having the possession of spirituous liquor for the purpose of sale, etc., the exclusion of the defendant's testimony that he was not implicated in the unlawful act, and had forbidden his son to do it, is harmless error when it appears that the same evidence had been introduced at the trial, and had been submitted to the jury under a correct and clear instruction of the trial judge.

4. **Constitutional Law — Federal Constitution—Limitation of Powers— Courts—Procedure—Indictment—Grand Jury.**

   Article V of the Federal Constitution, providing that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury" is a limitation imposed on the powers of the Federal Government, and applies to the procedure in the Federal courts, and not to trials for the violation of our State statutes relating to our liquor laws in the State courts. *S. v. Pulliam, ante,* 681, and other like cases, cited and applied.

5. **Criminal Law—Evidence—Other Offenses—Scienter—Guilty Knowl-**
   **edge—Related Criminal Acts.**

   The principle upon which other offenses may be shown to have been
   committed against our criminal law by the defendant, though not charged
   therewith in the indictment, should be strictly construed, and applies only
   when they are so related with the unlawful act charged as to show
   *scienter* or guilty knowledge, if such is relevant to the inquiry in the
   particular case, and not too remote in point of time; and where the
   defendant is on trial for having possession of spirituous liquor for the
   purpose of sale, evidence that he had committed a like offense eleven years
   previous to the time of the offense charged is incompetent, and its admis-
   sion at the trial constitutes reversible error when there is no evidence
   tending to show that the previous offense was related to or in any way
   connected with the one for which he was being tried. *S. v. Beam*, 179
   N. C., 768, and other cases, cited and applied, and the competency and
   relevancy of such testimony discussed by WALKER, J.

   CLARK, C. J., dissenting.

APPEAL by defendant from *McElroy, J.*, at Spring Term, 1922, of
CLEVELAND.

*Attorney-General Manning and Assistant Attorney-General Nash for*
*the State.*
*Ryburn & Hoey and O. Max Gardner for defendant.*

The defendant was convicted, at March Term, 1922, of Cleveland
Superior Court, of having in his possession spirituous liquors for the
purpose of sale, and of receiving more than one quart thereof within
fifteen days time, and from the judgment upon such conviction appealed
to this Court.

Defendant's exceptions 2 and 7 were taken to the judge's refusal of
a judgment as of nonsuit against the State at the conclusion of its
testimony, and again at the conclusion of all the testimony. The State's
evidence, if believed, showed that in consequence of information re-
ceived by them, officers E. W. Dixon, J. F. Dixon, and M. N. Moore,
after obtaining a proper search warrant, went out on Thursday before
Christmas, 1921 (22 December), to Beam's residence, about one mile
and a half from Grover, in Cleveland County. The search was made
about 3 p. m. of that day. As the officers drove slowly along in front
of defendant's house, they noticed three men coming out of a little shop
building, and one of those men was putting something in each hip pocket
as he came out. This man went out behind the house to the railroad,
going in the direction of Kings Mountain. What he was putting in
his pocket appeared to be bottles. Officer Moore stopped the man with
the bottles on the railroad and found that they contained two pints of
liquor, and looked like the bottles that were found on the premises of
the defendant.

The defendant Beam was one of the three men coming out of this shop building at the time that the officer Moore got the two pints of whiskey. This shop building was about fifty yards from the defendant's house. The son of the defendant Audie Beam, on seeing the officers, ran back in the shop and they heard something smashing in there. Officer E. W. Dixon then went to the shop, and when he reached the door Audie Beam was breaking bottles out of the window against the side of the house. The bottles were filled with whiskey. "I ran in after him and he jumped out of the window and ran across a big field. As he ran he had his arms full and would throw the bottles against the ground and break them," Dixon testified. Young Beam also had bottles in his pocket.

The officers, continuing the search, found something like eighteen to twenty gallons of liquor, apparently concealed, on the premises. Besides the bottles that were broken, as above stated, they found in the barn, which was nearer the house than the shop, some jars, one of which had liquor in it. In the shop there were bottles covered up and hid. The ground nearby had been hollowed out into a trench and a plank was over it; that is, the ground had been turned back and a hollow place thus made, and in it were some of the bottles. Just above the shop they found a keg, lying beside a stump, with a few briers over it, that contained about fifteen gallons. At the defendant's sawmill, about two hundred yards from the house, they found some large empty kegs which had had whiskey in them. They also found two five-gallon demijohns. There had been liquor in them and tracks about them appeared to have been made the night before.

WALKER, J. It is manifest, we think, that there was sufficient evidence to be submitted to the jury, as to the defendant's guilt upon the charge contained in the indictment or warrant.

Exception 1 was to the exclusion of an answer to a question put by defendant's counsel to officer E. W. Dixon on his cross-examination: "Did Audie Beam tell you whose whiskey that was right at the time that you arrested him?" The State objected and the objection was sustained. If Audie Beam himself had been on trial, the exclusion of the answer to this question would have been error, but Audie Beam was not on trial; consequently, this was a mere declaration of a third party, and hearsay.

Exceptions three, four, and five are untenable. They relate to testimony offered by the defendant that he had forbidden his son, Audie Beam, who was the real culprit, to deal in liquor on his, defendant's, premises, and that instead of selling liquor there himself, or keeping it for sale, he had protested against such illegal traffic and very positively

forbidden it. These exceptions do not appear very clearly in the part of the record where they are first noticed, and especially as to what evidence of this kind was permitted by the court to be heard by the jury, but upon a close examination of the charge of Judge McElroy, it appears that the evidence was submitted to the jury for their consideration and a proper and quite a full instruction given in connection with it. It was admitted, at least, substantially by the court, although rejected at first. No harm or prejudice has therefore been suffered by the defendant in connection with this testimony.

The exceptions to the verdict and judgment, because there was no presentment or indictment, are, as we have shown, without any force, as Article V of the Federal Constitution does not apply. It reads as follows: "No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury." It applies only to the Federal courts and their procedure, as will appear by the authorities hereinafter cited when this question will be further considered."

Exception 6 was taken to the admission of evidence that J. P. Hambright had bought whiskey from the defendant about eleven years before and had paid him $1 for a quart. The State contended that evidence of sales previous to the two-year limit of the statute is admissible as a circumstance sustaining the allegation of the State that defendant had liquor in his possession for the purpose of sale within the two years limit. This may be true, and yet the evidence be incompetent, as it is, upon another alleged ground, which is, that the testimony of the witness J. P. Hambright related to a transaction too remote in point of time and not so connected with the transaction now in question for it to be any evidence of the knowledge of the defendant that the liquor was kept for sale, or to show his motive or intent in disposing of it, if he did so, and further, as having no relevancy because the alleged sale which is referred to in Hambright's testimony was totally unconnected with the offense for which the defendant is indicted in this case. *S. v. Beam,* 179 N. C., 768, and authorities *infra.*

The case of *S. v. Murphy,* 84 N. C., 742, is, upon this question, a very instructive and illuminating one, the opinion being by *Justice Ashe,* who had for many years large experience in the trial of criminal cases when at the bar, and was profoundly learned in that branch of legal science. In the *Murphy case, supra,* after reviewing several of the leading cases decided in this country and in England, he said: "It is a fundamental principle of law that evidence of one offense cannot be given in evidence against a defendant to prove that he was guilty of another. We have been unable to find any exception to this well established rule, except in those cases where evidence of independent offenses

have been admitted to explain or illustrate the facts upon which certain indictments are founded, as where in the investigation of an offense it becomes necessary to prove the *quo animo,* the intent, design, or guilty knowledge, etc.    In such cases it has been held admissible to prove other offenses of like character, as for instance, in indictments for passing counterfeit money, the fact that the defendant, *about the same time,* had passed other counterfeit money of like kind, has been uniformly held to be admissible to show the *scienter* or guilty knowledge.    So, on a charge for sending a threatening letter, prior and subsequent letters from the defendant to the person threatened have been received in evidence, explanatory of the meaning and intent of the particular letter, upon which the indictment is found.    *Rex v. Boucher,* 4 C. & P., 562." And as illustrating the principle involved in that case, he further stated that on indictments for receiving stolen goods, knowing them to be stolen, the prosecutor has been allowed to prove several acts of like character, with the view of showing therefrom a guilty knowledge on the part of the defendant.    Whar. Cr. Law, sec. 639.    "But as was suggested by the author," said *Justice Ashe,* "there should be some evidence showing a link or connection between them."

In *Rex v. Davis,* 6 C. & P., 117, also approved by this Court in the *Murphy case, supra,* it appeared that, on the trial of an indictment for receiving stolen goods, evidence was admitted for the purpose of showing guilty knowledge of the defendant that other goods found, *at the same time, in the house of the defendant,* were stolen, although they were the subject of an indictment then pending.    The judge before whom it was tried said:  "A particular line is not fixed upon.    All is evidence with a view to the *scienter.*    There is no excluding the other articles found.    But I do not think you should go further."    That is, that the evidence was admissible to show the *guilty knowledge* of the defendant, but for no other purpose.    "It is important not to confound the principles upon which the two classes of cases rest.    On the one hand it is admissible to produce evidence of a distinct crime to prove *scienter,* or make out the *res gestæ,* or to exhibit a chain of circumstantial evidence of guilt in respect to the act charged.    On the other, it is necessary strictly to limit the evidence to these exceptions, and to exclude it, when it does not legitimately fall within their scope."    Whar. Cr. Law, sec. 650.

One who commits a crime may be more likely to commit another; yet, logically, one crime does not prove another, nor tend to prove another, unless there is such a relation between them that proof of one tends to prove the other.    Unless such a relation exists, it is illegal and manifestly unfair to require a man who is charged with a specific crime in the indictment to prepare a defense against other crimes that the State

may attempt to prove against him, but which are not charged in the bill. The general rule should, therefore, be strictly enforced in all cases where applicable. However, there are exceptions. The rule only applies to cases where the offense charged and that offered to be proved are distinct. It does not apply where the subject-matter under investigation is of such a nature that it may consist of several stages or continuous acts, all constituting one transaction. Evidence which is relevant to the issue raised by the plea to the indictment is not made inadmissible by reason of the fact that it tends to prove the defendant guilty of another crime than that charged in the indictment. Such evidence is received, not because it is proof of the other crime, but because of its relevancy to the charge upon trial. While the prosecution cannot show separate and isolated crimes, or facts having no bearing upon the crime under investigation, it may show all the circumstances connected with the particular crime, even if in so doing it has to bring to light other offenses. 10 R. C. L., p. 940, sec. 110.

As this is an important question, we may just as well state the principal rule with some of its exceptions or qualifications which are pertinent here. The general rule is that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime, wholly unconnected with that for which he is put upon his trial, must be excluded. It is deemed to be not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another. It may be easier to believe a person guilty of one crime if it is known that he has committed one of similar character, or, indeed, of any character; but the injustice of such a rule in courts of justice is apparent. It might lead to convictions upon the particular charge made by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one. Again, evidence of other crimes compels the defendant to meet the charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before it, and, by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him. According to a broader rule, in all cases, civil or criminal, the evidence must be confined to the point in issue; and it is said that in criminal cases the necessity is even stronger than in civil cases of strictly enforcing the rule, for where a prisoner is charged with an offense, it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of

the indictment and matters relating thereto, which alone he can be expected to come prepared to answer. What has been said relates, of course, to the common-law system; under the civil law a somewhat different method is pursued, and much is claimed for it as a mode of achieving justice. The rule against admitting proof of extraneous crimes is subject, however, to certain qualifications or exceptions. In making proof against a defendant it is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constitutive elements of the crime of which the defendant is accused in the case on trial, even though such facts and circumstances may tend to prove that the defendant has committed other crimes. So evidence covering the commission of other offenses is admissible when two or more crimes are so linked in point of time or circumstances that one cannot be fully shown without proving the other. Thus, for the purpose of proving a defendant guilty of the larceny of one article it is proper to prove that he stole other articles on the same expedition, but it is not proper to prove what he stole on an independent occasion. It is often difficult to determine the degree of relevancy which entitles the prosecution to introduce evidence showing the commission of other crimes, but much of the difficulty with reference to such evidence disappears if the evidence is considered strictly upon the ground of its relevancy to the purpose for which it is sought to be introduced, regardless of the fact that it may incidentally show the commission of some other offense. In other words, there ought not to be any more difficulty in deciding the relevancy of such evidence than there is when the circumstance of some other offense appearing is not involved. The mere proximity of time within which two offenses may be committed does not necessarily make one a part of the other. Immediateness is not the true test, but relevancy. There must be a causal relation or logical and natural connection between the two acts, or they must form parts of but one transaction. Where one offense constitutes a necessary element of another, proof may be made thereof. 8 R. C. L., p. 198, sec. 197.

Whenever mental state, *scienter,* or *quo animo* constitutes an ingredient of the offense charged, evidence is admissible of acts, conduct, or declarations of the accused which tend to establish such knowledge, intention, or motive notwithstanding the fact that it may disclose a different crime in law, but this is also subject to the qualifications already noted. 8 R. C. L., p. 201, sec. 197.

A very good exposition of the principle will be found in 16 Corpus Juris, 589, 590, 591, which corresponds, in the main, with that of Cyclopedia of Law and Procedure just cited, though not in all particulars. It is as follows: "Where the nature of the crime is such that guilty knowledge must be proved, evidence is admissible to show that, at

another time and place not too remote, accused committed, or attempted
to commit, a crime similar to that charged. In other words, where
guilt cannot be predicated on the mere commission of an act, guilty
knowledge may be proved by evidence of complicity in similar offenses;
but where a guilty knowledge is presumed from the character of the
criminal act, evidence of other crimes should not be received. Evidence
of other crimes similar to that charged is relevant and admissible when
it shows, or tends to show, a particular criminal intent which is neces-
sary to constitute the crime charged. Any fact which proves, or tends
to prove, the particular intent is competent, and cannot be excluded
because it incidentally proves an independent crime. Where the ques-
tion is whether a certain act was intentional or was done by accident or
mistake, evidence to show that accused intentionally had committed
similar acts is relevant to show the intent. On the other hand, where
the nature of the offense is such that proof of its commission as charged
carries with it an implication or presumption of criminal intent, evi-
dence of the perpetration or attempted perpetration of other like offenses
is inadmissible. While, for evidence thereof to be admissible to show
intent, the similar offenses must be related in kind to the one in question
as to illustrate the question of intent, and must have been done suffi-
ciently near, in point of time, to the act charged as to fairly throw
some light on the question of intent." And in *Prettyman v. U. S.,* 180
Federal Reporter, 30 *(S. c.,* 10 Ct. Court of Appeals, 384); the Court
stated very fully the rule, with the exception or qualification, applicable
in cases of this kind, where knowledge, motive, or intent is an ingredient.
It was said there: "The court below, over the objection of the defend-
ants; permitted the introduction of testimony as to many acts other
than those alleged in the indictment in order to prove the intent of the
accused in doing the things which are charged to be criminal. The
thoroughly established rule is that acts not charged in an indictment
cannot be proved, among other reasons, because no testimony is pertinent
unless it relate to the matters charged in the indictment, and as to which
an issue is formed by the plea of not guilty, and because the accused,
having no notice that testimony as to any other act would be offered,
could not be prepared to meet it. But to this general rule there is at
least one important exception, and where the intent with which an act
charged to be criminal has been done becomes important, as it neces-
sarily is in this case, then, within certain limits, proof of similar acts
of the accused is admissible in order to show the intent with which the
act charged in the indictment was done. We think, however, that such
similar acts can be proved only when they were done sufficiently near,
in point of time, to the act charged as fairly to throw some light upon
the question of intent; when the similar acts are so related in kind to

47—184

the one charged as to illustrate the question of intent; when the similar acts are in fact acts of the same general nature, or closely related to the transactions out of which the alleged criminal act arose; and when, in fact, the similar acts are acts of the person accused against whom that particular proof is directed. *People v. Molineux,* 168 N. Y., 264; 61 N. E., 286; 62 L. R. A., 193; *Penn. Mut. Life Ins. Co. v. Mechanics, etc., Bank,* 72 Fed., 422; 19 C. C. A., 286; 38 L. R. A., 33, 70; 3 Greenleaf on Evidence, chs. 15, 16; 1 Jones on Evidence, ch. 142; 1 Wigmore on Evidence, ch. 302; *Moore v. United States,* 150 U. S., 57; 14 Sup. Ct., 26; 37 L. Ed., 996; *Wood v. United States,* 16 Pet., 360; 10 L. Ed., 987."

The principles we have stated, with their limitations, were considered in *Gray v. Cartwright,* 174 N. C., 49, it being an action for malicious prosecution, the defendant having charged the plaintiff with stealing his cow, to which case we also refer as authority applicable here, and also to *S. v. Beam,* 179 N. C., 768.

This question is also fully considered in 12 Cyc., 408, where it is said: "Where the nature of the crime is such that guilty knowledge must be proved, evidence is admissible to prove that at another time and place *not too remote* the accused committed or attempted to commit a crime similar to that charged. Evidence of other crimes similar to that charged is relevant and admissible when it shows, or tends to show, a particular criminal intent which is necessary to constitute the crime charged. Any fact which proves, or tends to prove, the particular intent is competent, and cannot be excluded because it incidentally proves an independent crime. Where the question is whether a certain act was intentional or accidental, evidence to show that the accused intentionally committed similar acts before is relevant to show the intent. So, also, where malice is an element in the crime charged, as in murder, assault with intent to kill, arson, malicious mischief, and the like, evidence of another similar act by the accused is admitted to show malice. Evidence to show the motive prompting the commission of the crime is relevant and admissible notwithstanding it also shows the commission by the accused of another crime of a similar or dissimilar character. Thus it may be shown that the crime charged was committed for the purpose of concealing another crime, or to prevent the accused from being convicted of another crime. But evidence of another crime, *which has no connection with that for which the accused is on trial,* and which therefore is not relevant to prove motive, cannot be introduced under the guise of proving motive. Where the crime charged is part of a plan or system of criminal action, *evidence of other crimes near to it or similar in character* is relevant and admissible to show the knowledge and intent of the accused, and that the act charged was not

STATE *v.* BEAM.

the result of accident or inadvertence. This rule is often applied where the crime charged is one of a series of swindles, or other crimes involving a fraudulent intent, for the purpose of showing this intent."

The question is not, as seems to be supposed, that the testimony of Hambright was harmless, as all the authorities stated that this kind of evidence is, on the contrary, very harmful to the defendant, and is often calculated to secure a conviction, when defendant may be innocent, and for this reason, if for no other, the rule admitting it, in some cases, should be strictly enforced, and the evidence should be excluded where it does not relate to a transaction near to the commission of the offense in point of time, or so related to it as to throw light upon the question of guilt.

The defendant's counsel in this Court moved to arrest the judgment because the defendant was tried on a warrant from the recorder's court without any bill having been sent to and returned by the grand jury. They cite a case from the United States Supreme Court, which they claim is authority for their position. The first ten amendments to the Federal Constitution, however, are limitations upon the power of the Federal Government only. They do not, and were never intended to, limit the power of the individual states. With us the law has been settled adversely to the present contention of the defendant in a number of cases. *S. v. Hyman,* 164 N. C., 411; *S. v. Lytle,* 138 N. C., 738; *S. v. Publishing Co.,* 179 N. C., at 724, and the recent case of *S. v. Pulliam, ante,* 681, from Forsyth County.

It is not necessary, in view of what has already been said, to consider exceptions to the charge of the court, as they may not again be presented, nor will we discuss the other exceptions, it being useless to do so for the same reason.

There was error in admitting Hambright's testimony which entitles defendant to another trial.

New trial.

CLARK, C. J., dissenting: The evidence in this case was such that if believed the jury could not have found a verdict other than guilty, as the opinion-in-chief intimates. When the officers went up to the defendant's house they found the defendant and two others running out of the shop building 50 yards from defendant's house. His son ran back and they found him smashing bottles on the side of the house. These bottles were filled with whiskey. When the officers approached he jumped out of the window and ran with his arms full of bottles which he threw on the ground to break them. He also had bottles in his pockets. The officers continued the search and found 18 to 20 gallons of liquor concealed on the defendant's premises behind the shop. They also found

in the barn, which was nearer the house than the shop, some jars, one of which had liquor in it.   In the shop there were found bottles covered up and hid.   The ground nearby had been hollowed out into a trench and a plank put over it; that is, the ground had been turned back and a hollow place thus made, and in it were found other bottles of whiskey. Just above the shop the officers found a keg lying beside a stump with a few briars over it that contained about 15 gallons.   At the defendant's sawmill, about 200 yards from the house, they also found 2 large empty kegs which had whiskey in them, and two 5 gallon demijohns in which there had been liquor, and tracks appearing to have been made the night before.

On this evidence the jury could not do otherwise than convict the defendant.   There were several exceptions, but the distinguished counsel for the defendant frankly stated that the only ground on which he could ask for a new trial was the following:   On examination of witnesses by the State as to the defendant's general character, the sheriff testified that the general reputation of the defendant was that he was a liquor handler.   To this the defendant objected, but did not except.   The deputy sheriff, J. F. Dixon, testified that he was deputy sheriff in that community; that he knew M. L. Beam's reputation, but knew "nothing against him except that he dealt in whiskey.   That is his reputation." To this there was no objection or exception.   When asked if he knew any one who had bought liquor from the defendant, he stated that J. P. Hambright had, who was present.   Hambright being put on the stand, testified that he lived a little over two miles from the defendant, and that he got liquor there one time from him and paid him $1.   That was about 8 years ago.   The record stated that the defendant objected to that testimony and excepted.   On the argument here the Attorney-General filed a letter from the solicitor that this was not excepted to; that the case was not settled by the judge, but by the prisoner's counsel and himself, and he had signed it inadvertent to the statement therein that exception was made, but that in fact no exception has been entered. The case was not settled by the judge, and as the defendant's counsel stated that as a matter of fact the exception was taken, the Court must take it to be correct.   *S. v. Chaffin,* 125 N. C., 665.   The defendant's counsel contends strenuously that such testimony was error, but it was error only because too remote and irrelevant, and tended to prove nothing.

It has long been settled by this and all other courts that an error is not sufficient to grant a new trial when it is apparent that it could not have contributed to the verdict.

The evidence is so complete and overwhelming that the defendant was largely engaged in the continuous violation of the statute that it could not possibly have affected the result that the witness stated that he had

bought a quart of liquor from the defendant 8 years before. The sheriff had just testified that he knew the reputation of the defendant, and that he was a handler of liquor, and the deputy sheriff had testified to the same. To neither of these statements was any exception taken. The fact that Hambright stated that he had gotten a quart of liquor from the defendant some 8 years before in no conceivable way could have affected the verdict upon the evidence above stated. It was incompetent and irrelevant because too remote. Its admission was harmless, for if he had testified that he had bought no liquor from the defendant it could not have procured his acquittal in face of the overwhelming proof, and the fact that he had bought a quart 8 years before could not have added in any way to the force of the uncontradicted testimony of defendant's guilt.

If the witness had been asked and stated that the defendant was born in that county, or that he was over fifty years of age, or any other similar matter, it would have been equally incompetent and would have had no more effect upon the verdict than the statement that the witness had bought a quart of liquor from the defendant 8 years before. The admission of such testimony as that would not have vitiated the verdict, neither should this evidence of a matter equally irrelevant and harmless.

The prohibition law was enacted in this State upon a referendum to the people 15 years ago, and has been in full force here ever since. So convinced were the people of the whole country that the traffic in liquor was to the public detriment that an amendment to the Constitution of the United States was adopted by both houses of Congress and ratified by 46 out of the 48 states of this Union. A law which has been so solemnly enacted after so long a discussion, and which so clearly expresses the will of the people, should be enforced in an effective manner. The sole function of the courts is to so construe and execute the law that it may effectuate the remedy desired.

It is universally known that the beneficial result of the statute has been demonstrated not only by the reduction in the volume of crime; in the increased efficiency of a sober population, but billions of dollars worth of real estate once devoted to drinking purposes is paying a larger return under its new uses. The great decrease in the number arrested for drunkenness and other misdemeanors and in the population of the jails and workhouses; the fewer demands made for relief to charitable organizations; the smaller number of alcoholic patients entered in public hospitals, and a thousand other results demonstrate the wisdom of this enactment which has been placed by so overwhelming a majority in the organic law. Indeed, but for this act the operation of automobiles would not be feasible. The universal popularity of prohibition among retail tradesmen, who have profited from increased business in furnish-

ing the necessities of existence to those formerly deprived of them, is further testimony as to the advantages of the statute.

Every consideration, therefore, requires a frank enforcement of the law when the evidence plainly requires it, and that no mere formal error which cannot affect the result should be permitted to nullify a serious trial for such crime in violation of the fundamental law of the land.

When there occurs an error in the trial which it is apparent could not have affected the result, it has been uniformly held by this and all other courts that it will be disregarded. "Where a case is tried in substantial accordance with law, technical errors not prejudicial do not entitle the losing party to a reversal." *Alexander v. Savings Bank,* 155 N. C., 124; *Hulse v. Brantley,* 110 N. C., 134.

"Technical errors will be considered harmless where a reversal would not result in a different verdict." *McKeel v. Holloman,* 163 N. C., 132. Where all the essential facts upon which the result depends have been passed upon by the jury, the appellate court will not for formal error grant a new trial. *Rich v. Morisey,* 149 N. C., 37.

"Error to warrant reversal must be prejudicial." *Penland v. Barnard,* 146 N. C., 378; *Ratliff v. Huntly,* 27 N. C., 545; *Butts v. Screws,* 95 N. C., 215; *Hosiery Mills v. Cotton Mills,* 140 N. C., 458; *Harvell v. Lumber Co.,* 154 N. C., 258; *Holt v. Wellons,* 163 N. C., 124; *Steeley v. Lumber Co.,* 165 N. C., 27; *Brogden v. Gibson, ibid.,* 16.

"Error alone is not sufficient to reverse, but there must be harm to the party who excepts, and if it appears there is none, his exception fails." *Carter v. R. R.,* 165 N. C., 249; *Young v. Mfg. Co.,* 151 N. C., 272; *Barker v. Ins. Co.,* 163 N. C., 175.

"It is well settled that the Supreme Court will not review a ruling of its own, or of the court below, which does not injuriously affect the complaining party, even if the ruling was erroneous." *Nissen v. Mining Co.,* 104 N. C., 309.

Indeed, the decisions in this Court are uniform and numerous, and based upon the sound principle that the object of a trial is the ascertainment of the truth of the issue, which in this case was whether the party charged was guilty of dealing in spirituous liquors contrary to law, and on this question there can be no two opinions upon this evidence.

The decisions in other courts are uniform to the same effect. In *S. v. Hessenius,* 165 Iowa, 415, it was held that the admission of irrelevant and incompetent testimony, which could not affect the result and which should have been excluded as immaterial, does not justify a new trial.

In *S. v. Chipman,* 40 Utah, 549, it was held that the Court, on appeal, will give judgment without regard to defects not affecting substantial rights.

In *Woody v. State,* 10 Okla. Cr., 322, it was held: "Where the legal evidence in a case conclusively shows that a defendant is guilty, and where the jury could not rationally arrive at any other conclusion, ordinary errors committed by the trial court in the introduction or rejection of evidence are immaterial, and will not justify a reversal." In that case the court laid down the principle which should govern in all such trials as follows: "Where it is clearly proved that a defendant is guilty as charged, a conviction should not be reversed unless it affirmatively appears from the record that the defendant was deprived of some substantial right, to his injury, upon the trial."

In *S. v. Pruett,* 22 N. M., 223, it is held: "The admission of an item of evidence which is immaterial, and which technically is inadmissible, where it in no way reflects upon the guilt or innocence of the defendant cannot be prejudicial to him, and is not sufficient cause to reverse a judgment."

In *S. v. Gardner,* 96 Minn., 318, it is held: "Errors in ruling on evidence which do not result in prejudice to the accused, and which can in no reasonable way affect the result of the trial, are not sufficient basis for granting a new trial in criminal prosecution," citing *S. v. Nelson,* 91 Minn., 141, and other cases.

In *People v. Owen,* 154 Mich., 571, the principle which should obtain is thus laid down: "A conviction should not be reversed for error in admitting testimony where a verdict of guilty should have been rendered without its admission." That is exactly the case here.

The universal principle which should obtain is thus laid down as indisputable law in *Hoge v. People,* 117 Ill., 36: "Where the Court can see from the record that the evidence is so overwhelming against the defendant, tried for a criminal offense, that had the jury been instructed correctly they must still have found against him, it will not reverse a judgment of conviction for a mere error of instruction. For the same reason a conviction should not be reversed for admitting testimony *without which it is perfectly evident that a verdict of guilty should have been rendered."*

This states the uniform ruling of all the courts on this matter, and is entirely applicable to this case where the evidence admitted could not possibly have reversed the overwhelming evidence of the defendant's guilt, and that in a matter of violation of a nation-wide and constitutional provision, which the defendant, beyond all possible question, was proven to have been habitually engaged in violating.

The above cases and principles are especially applicable here, for it must be remembered that the testimony objected to was pertinent except for the fact that it was too remote and had no probative effect. Otherwise it was perfectly competent.

Even in the last two volumes of our Reports there are no less than 9 cases enforcing this wholesome doctrine that an error will not justify a reversal unless it appears that it may have affected the result: *Rankin v. Oates,* 183 N. C., 520; *Ledford v. Lumber Co., ibid.,* 616; *Newton v. Newton,* 182 N. C., 55; *Jordan v. Motor Lines, ibid.,* 561; *Fellows v. Dowd, ibid.,* 777; *S. v. Jones, ibid.,* 787; and especially in point is *In re Edens,* 182 N. C., 400, in which *Stacy, J.,* says: "Verdicts and judgments are not to be set aside for harmless error, or for mere error and no more. To accomplish this result it *must be made to appear* not only that the ruling was erroneous, but that it was *material and prejudicial,* amounting to a denial of some substantial right," citing *Cotton Mills v. Hosiery Mills,* 181 N. C., 33; *Burris v. Litaker, ibid.,* 376; *S. v. Smith,* 164 N. C., 476, and *Cauble v. Express Co.,* 182 N. C., 448.

In this last case *Walker, J.,* p. 450, lays down the sound principle in unmistakable language, as follows: "When the aid of this Court is invoked to grant a new trial, the motion for the same will be carefully weighed by us, and will be denied unless the merits are made *clearly to appear.* Courts do not lightly grant reversals, or set aside verdicts, upon grounds which show the alleged error to be harmless, or where the appellant could have sustained no injury from it. There should be, at least, something like a practical treatment of the motion to reverse, and it should not be granted except to subserve the real ends of substantial justice. The motion should be meritorious and not based upon merely trivial errors committed manifestly without prejudice. Reasons for attaching great importance to small and innocuous deviations from correct principles have *long ceased to have that effect and have become obsolete. The law will not now do a vain and useless thing.* The foundation of an application for a new trial is the allegation of injustice and the motion is for relief. Unless, therefore, some wrong has been suffered, there is nothing to be relieved against. The injury must be positive and tangible, not theoretical merely. For instance, the simple fact of defeat is injurious, for it wounds the feelings, but this alone is not sufficient ground for a new trial. It does not necessarily involve loss of any kind, and without loss, or the probability of loss, there can be no new trial. The complaining party asks for redress, for the restoration of rights which have first been infringed and then taken away. There must be, then, a probability of repairing the injury, otherwise the interference of the Court would be but nugatory. There must be a reasonable prospect of placing the party who asks for a new trial in a better position than the one which he occupies by the verdict." For this valuable and clear reasoning there is cited numerous authorities, and to which the author of the opinion adds this: "Surely when this rule, which is both sensible and just, is applied to the facts in hand

there is nothing to be gained by granting a new trial for the reason stated by the defendant, and it would, practically considered, be unwise to do so, as a motion, so far as it relates to this ground upon which it is based, is without any genuine merit." This applies to the present case, for upon the same evidence, when the cause is tried again, with the omission of this evidence as to the purchase of a quart of liquor 8 years before, the admission of which is the only error relied on, the result could not be changed.

In *S. v. Hairston,* 182 N. C., 851, it was held that the error in the exclusion of testimony is not ground for a new trial when it appears that it was harmless. To same purport in 181 N. C. are *Cotton Mills v. Hosiery Mills,* 181 N. C., 33; *Smith v. Allen, ibid.,* 56; *Cotton v. Fisheries, ibid.,* 151, and other cases.

When we consider the importance of enforcement of this law, which has been placed in the Constitution, it is doubly necessary that new trials shall not be granted when it is apparent that the error complained of, when not repeated on a new trial, would not change the result.

The defendant has been twice convicted—before the recorder's court and on appeal in the Superior Court. There is nothing that requires that he should have still another trial.